691 P.2d 726

**Richard W. PRENDERGAST, Anthony R. Canning and Steven L. Raether, on behalf of themselves and all others similarly situated and Tempe Lodge # 11; Fraternal Order of Police, Inc., Plaintiffs-Appellees,**

**v.**

**CITY OF TEMPE, a municipal corporation; Kenneth McDonald, in his official capacity as City Manager of Tempe, Arizona, Defendants-Appellants.**

**No. 1 CA–CIV 6542.**

Court of Appeals of Arizona, Division 1, Department A.

Sept. 25, 1984.

Review Denied Dec. 4, 1984.

**16**

McGroder, Pearlstein, Peppler & Tryon, P.C. by Patrick J. McGroder, III, Phoenix, for appellees.

David R. Merkel, Tempe City Atty., Vincent A. Iannone, Asst. City Atty., Tempe, for appellants.

OPINION

GRANT, Presiding Judge.

Plaintiffs-Appellees brought a class action to secure a declaratory judgment that the thirty-minute meal period provided to City of Tempe police officers assigned to traffic or patrol division, from March 14, 1979 to December 31, 1980, constituted work for overtime purposes pursuant to A.R.S. § 23–392(A). The complaint also sought an accounting and an award of damages for overtime pay. The trial court entered judgment for the certified class and against appellant, the City of Tempe (City), holding that the meal period constituted compensable work time. Damages were determined to be $250,775.50 plus attorneys' fees, prejudgment interest and costs.

On appeal the City raises the following issues:

1. Whether the meal period constitutes work for purposes of A.R.S. § 23–392(A);

2. Whether appellees are entitled to money damages for the previously uncompensated meal periods;

3. Whether the trial court erred in awarding attorneys' fees;

4. Whether the trial court erred in awarding pre-judgment interest.

The facts are not in dispute. Prior to 1975 the City compensated its uniformed police officers assigned to patrol and traffic divisions for their thirty-minute meal period. In 1975, however, the City amended its city ordinance to provide:

Law enforcement employees shall eat lunch on their own time. Law enforcement employees shall be allowed to cease work for lunch at a time designated by their Department Head and shall not be paid for such time . . . . They are subject to and shall respond to all calls and assignments during lunch periods. Any part or all of the thirty minute lunch period not received because of calls and assignments shall count towards satisfying the normal daily tour-of-duty or work schedule . . . .

Tempe, Ariz., Ordinance no. 636, rule 17, § 19(C). Thereafter, the normal tour-of-duty consisted of eight compensated hours and a one-half hour uncompensated meal period, unless the officer responded to a call or assignment. This policy remained in effect until January 1, 1981, after which the City again compensated uniformed patrol and traffic division police officers for their thirty-minute meal time, whether or not they responded to a call or assignment.

This action was instituted on March 14, 1980. The complaint sought a declaration that, due to restrictions placed upon uniformed officers of the patrol and traffic divisions, the meal period for such police officers constituted work for overtime purposes of A.R.S. § 23–392(A). The plaintiffs also sought an accounting and damages for back pay for such work. On July 24, 1980, the cause was certified as a class action. Cross-motions for summary judgment on the issue of liability were filed. The parties agreed that there were no disputed material issues of fact, but reached opposite conclusions of law from the undisputed facts. The lower court granted partial summary judgment in favor of the plaintiff class holding that:

> [T]hese plaintiffs are on duty and substantially performing the objectives of their employment, for the benefit of their employers.

Pursuant to stipulation between the parties an accounting was conducted which established the City's liability at $250,-775.50. Final judgment was entered in favor of the plaintiff class on April 21, 1982. This appeal followed:

## I. WORK TIME

A.R.S. § 23–392(A) provides:

> Any person engaged in law enforcement activities shall be compensated for each hour worked in excess of forty hours in one work week, at the option of such employer either at a rate of:
>
> 1. One and one-half times the regular rate at which he is employed; or
>
> 2. One hour of compensatory time off in lieu of cash payment.

The legislature did not define what constitutes "work" for purposes of this section. The City argues that, since the legislature failed to define "work," as a home rule municipality it may define the term as it chooses. Alternatively, the City asserts that the parties are free to determine what constitutes work and that by ordinance, which is implied in the contract between the plaintiff class and the City, the parties did so. Finally, the City posits that the proper interpretation of work should focus on whether the officers were performing their duties during the meal period. Under this standard, the City argues, the meal period should be considered non-compensable time.

■■■ The City contends that in the absence of a statutory definition of work, municipalities are free to define the term for itself. The City of Tempe is a charter or "home rule" municipality pursuant to article 13, § 2 of the Arizona Constitution. A charter city may exercise all powers authorized by its charter, except where such an exercise is inconsistent with out state constitution or the general laws of this state. *State v. Jacobson,* 121 Ariz. 65, 588 P.2d 358 (App.1978); A.R.S. § 9–284(B) (Supp.1983). Where a subject is of state-wide concern and the legislature has appropriated the field by enacting a statute pertaining thereto, any conflicting ordinances are invalid. *State v. Jacobson; Shaffer v. Allt,* 25 Ariz.App. 565, 545 P.2d 76 (1976). Where, as here, there is no direct conflict between an ordinance and state statutes, we inquire whether the state legislation has so completely occupied the field that it becomes the sole and exclusive law on the subject. *State v. Jacobson.*

■■ In *Gilbert v. County of Mohave,* 133 Ariz. 209, 650 P.2d 511 (App.1982), this court held:

> [W]e find that the matter of compensation to law enforcement personnel in Arizona is one of statewide concern and we further find that the legislature has appropriated the field by virtue of A.R.S. § 23–392 (Supp.1981).

*Id.* at 211, 650 P.2d at 513. We reaffirm this holding. Municipalities, such as the City of Tempe, are not at liberty to define the term "work" as it is used in A.R.S. § 23–392(A). The Arizona Legislature has mandated that law enforcement personnel receive compensation for all overtime worked. The city may not take away this compensation. *Gilbert v. County of Mohave.*

■■■ The City's second argument is also without merit. Where the legislature requires compensation for overtime, such requirement cannot be waived or substituted even by agreement between the parties. *Id.* See also *Mumbower v. Callicott*, 526 F.2d 1183 (8th Cir.1975); *Wirtz v. Bledsoe*, 365 F.2d 277 (10th Cir.1966); *Lerwill v. Inflight Services, Inc.*, 379 F.Supp. 690 (N.D.Cal.1974); *Farley v. United States*, 127 F.Supp. 562, 131 Ct.Cl. 776 (1955); *Abbott v. Beatty Lumber Co.*, 90 Mich.App. 500, 282 N.W.2d 369 (1979).

It is true, as the City of Tempe points out, that courts have stated, "[a]n employer and his employee may agree as to whether or not certain activity constitutes work within the Act [FLSA]." *Hofler v. Spearin, Preston & Burrows, Inc.*, 51 Misc.2d 758, 273 N.Y.S.2d 863 (1966). *See also Donovan v. Williams Chemical Co.*, 682 F.2d 185 (8th Cir.1982); *Bowers v. Remington Rand, Inc.*, 159 F.2d 114 (7th Cir.1946), *cert. denied*, 330 U.S. 843, 67 S.Ct. 1083, 91 L.Ed. 1288 (1947). In *Skidmore v. Swift & Co.*, the United States Supreme Court held:

> The law does not impose an arrangement upon the parties. It imposes upon the courts the task of finding what the arrangement was.

323 U.S. at 137, 65 S.Ct. at 163, 89 L.Ed. at 128. These cases do not hold, as the City urges, that employers and employees can agree[1] to classify as non-work, what is in reality work. To do so would be to permit waiver of the rights guaranteed under the Fair Labor Standards Act (FLSA) or Federal Equal Pay Act (FEPA), or A.R.S. § 23–392(A). These cases hold that employers and employees are free to bargain and agree upon the normal duties of the employees for each individual position, such duties constituting the work of the employee. Once this process is complete in the context of law enforcement personnel as provided in A.R.S. § 23–392, and a job description can then be compiled, the law requires compensation for any overtime worked.

Finally, we reach the gravamen of this appeal: What is the standard to be applied to determine whether an employee is working for A.R.S. § 23–392(A) purposes? The plaintiff class urges this court to apply a standard focusing on whether the restrictions placed on the employees, during the time in question, for the employer's benefit, render such time "work." This standard is derived from cases arising under the FLSA, 29 U.S.C. § 207.[2] The plaintiff class points out that Division Two of this court, in *Hockersmith v. City of Patagonia*, 123 Ariz. 559, 601 P.2d 322 (App.1979), relied on cases decided under the FLSA in an appeal involving A.R.S. § 23–392(A).

The City responds that rather than focusing on the restrictions placed upon the employee, this court should follow the lead of the Appeals Court of Massachusetts in *Erickson v. City of Waltham*, 2 Mass.App. 436, 314 N.E.2d 139 (1974), and inquire whether employees were substantially per-

---

1. We have doubts whether we could find an agreement where one party, the City, can unilaterally modify the employment contract by passing an ordinance, without the consent or approval of the employees. *See generally Beebe v. United States*, 640 F.2d 1283, 226 Ct.Cl. 308 (1981).

2. This section states in part:
   [N]o employer shall employ any of his employees ... for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.

   29 U.S.C. § 207(a)(1) (Supp.1984). Neither party contends that the FLSA applies to municipalities. *See National League of Cities & Towns v. Usery*, 426 U.S. 833, 96 S.Ct. 2465, 49 L.Ed.2d 245 (1976).

forming their normal duties during the time in question. This standard arose in cases decided under the FEPA, 5 U.S.C. 5542.[3] The City contends that focusing on the performance of duties is a better approach than reviewing the restrictions imposed on employees. In support of its position the City points out that under the FLSA special provisions were incorporated for municipal police officers. *See* 29 U.S.C. § 207(k) (Supp.1984).[4]

The lower court appears to have utilized both tests. The trial court relied on the decisions in *Glen L. Martin Nebraska Co. v. Culkin*, 197 F.2d 981 (8th Cir.1952); *Los Angeles Fire & Police Protective League v. City of Los Angeles*, 23 Cal.App.3d 67, 99 Cal.Rptr. 908 (1972); and *Lindell v. General Electric Co.*, 44 Wash.2d 386, 267 P.2d 709 (1954), two of which were decided under the FLSA. Nevertheless, the trial judge found that the plaintiffs were "on duty and substantially performing the objectives of their employment, for the benefit of their employers."

We do not believe there is any significant difference between the two standards; rather they are simply two sides to the same coin. In *Skidmore v. Swift & Co.*, 323 U.S. 134, 65 S.Ct. 161, 89 L.Ed. 124 (1944), the United States Supreme Court in a case arising under the FLSA stated:

Whether in a concrete case such time falls within or without the Act is a question of fact to be resolved by appropriate findings of the trial court. *Walling v. Jacksonville Paper Co.*, 317 U.S. 564, 572, 63 S.Ct. 332, 87 L.Ed. 460. This involves scrutiny and construction of the agreements between the particular parties, appraisal of their practical construction of the working agreement by conduct, consideration of the nature of the service, and its relation to the waiting time, and all of the surrounding circumstances. Facts may show that the em-

ployee was engaged to wait, or they may show that he waited to be engaged.

*Id.* 323 U.S. at 136–37, 65 S.Ct. at 163, 89 L.Ed. at 127–28. In *Armour & Co. v. Wantock*, 323 U.S. 126, 65 S.Ct. 165, 89 L.Ed. 118 (1944), in a decision interpreting the FLSA, the court held:

Of course an employer, if he chooses, may hire a man to do nothing, or to do nothing but wait for something to happen. Refraining from other activity often is a factor of instant readiness to serve, and idleness plays a part in all employments in a stand-by capacity. Readiness to serve may be hired, quite as much as service itself, and time spent lying in wait for threats to the safety of the employer's property may be treated by the parties as a benefit to the employer. Whether time is spent predominantly for the employer's benefit or for the employee's is a question dependent upon all the circumstances of the case.

*Id.* at 133, 65 S.Ct. at 168, 89 L.Ed. at 124.

Decisions under the FEPA have employed these same general principles. *See, e.g., Rapp v. United States*, 340 F.2d 635, 167 Ct.Cl. 852 (1964); *Gaetke v. United States*, 145 F.Supp. 913, 136 Ct.Cl. 756 (1956); *Farley v. United States*. Where the courts differ in their approach seems to be that cases decided under the FLSA focus on the limitations placed upon the employee during the time in issue, whereas courts in FEPA cases look for actual performance of duties, which may include waiting.

■ The proper and overriding test is whether the waiting time in issue is predominantly for the employer's benefit or for the employee's benefit. *See, e.g., Armour & Co. v. Wantock; Bell v. Porter*, 159 F.2d 117 (7th Cir.1946), *cert. denied*, 330 U.S. 813, 67 S.Ct. 1092, 91 L.Ed. 1267

---

**3.** This section reads in part:

[H]ours of work officially ordered or approved in excess of 40 hours in an administrative workweek, or ... in excess of 8 hours in a day, performed by an employee are overtime work ...

5 U.S.C. § 5542(a). Neither party contends this Act applies here.

**4.** This provision required overtime for police officers only after 216 hours of work in a four week period. 29 U.S.C. § 207(k) (Supp.1984).

(1947); *Blain v. General Electric Co.,* 371 F.Supp. 857 (W.D.Ky.1971); *Pilkenton v. Appalachian Regional Hospitals, Inc.,* 336 F.Supp. 334 (W.D.Va.1971); *Kelly v. Ballard,* 298 F.Supp. 1301 (S.D.Cal.1969). Where waiting time is in issue we are concerned whether the employee is engaged to wait or waiting to be engaged. *E.g., Skidmore v. Swift & Co.* As an employee's duties can include waiting time we find both standards appropriate.

A court in determining whether waiting time is work time must consider what the normal duties of the employee are and whether the employee's leisure is so restricted that it cannot be fairly said to be primarily for the employee's benefit. *See Pilkenton v. Appalachian Regional Hospitals, Inc..* It is the totality of *all* the circumstances which must be the court's yardstick.[5]

Turning now to the undisputed facts of this case, we conclude that the evidence clearly shows that the uniformed officers of the patrol and traffic divisions were working for purposes of A.R.S. § 23–392(A) during the meal period. Such officers were required, among other things, to: remain in uniform; respond to inquiries and requests for assistance from citizens; wear their service revolvers when appearing in public; carry hand radios or be where there is a listed telephone; seek approval prior to taking meal breaks, inform communications where they may be reached during such breaks, and obtain permission to take such breaks outside their assigned duty areas; and not to carry out private business while on duty. We have not listed all the limitations applicable, only highlighted some of the more restrictive limitations. The restrictions were directed at fulfilling the City's duty to provide protection to the residents of the city.

The City admitted that the mere presence of uniformed police officers in public places benefits the city and its residents.

It requires no special knowledge to realize that uniformed police officers are not constantly engaged, but often must spend time waiting to respond to emergencies. We see no difference then between meal periods and the rest of the officers' shift. In both instances the officers are on duty—subject to call, their mere presence in uniform helps to protect the public. The Chief of Police for Tempe, Arthur Fairbanks, in fact, conceded that the plaintiff class officers were on duty during their meal period.

In similar situations courts have found mealtime constituted work time. In *Los Angeles Fire & Police Protective League v. City of Los Angeles,* the California Court of Appeals held that, by reason of the restraints and obligations placed on uniformed officers for the employer's benefit, the officers were working during their mealtime.[6] The officers, among other restrictions, were subject to call at a moment's notice and could take their mealtime only at a time approved by their superiors.

In *Lindell v. General Electric Co.,* the court held that since the plant guards were under the control of their superiors, including being subject to call on a moment's notice, their meal period was compensable work under the FLSA. Similarly, in *Glenn L. Martin Nebraska Co. v. Culkin,* the court held that plant guards were substantially performing their normal duties during their lunch period, by their presence and vigilance.

We do not find the cases cited by the City to be persuasive. These cases involve different factual settings where the employees were not subject to similar restrictions. *See, e.g., Bennett v. United States,* 194 Ct.Cl. 889 (1971) (boat captains and

---

5. We reject the City's argument that Congress recognized the uniqueness of police work in providing specialized treatment in the FLSA. *See* 29 U.S.C. § 207(K) (Supp.1984). Such an adjustment only applies to the point where overtime accrues. Our legislature has not chosen to follow this line of thinking. Further, such an argument is irrelevant where the issue is the proper definition of work time.

6. Nevertheless the court found the officers were not entitled to compensation, since no ordinance authorized payment. Here, A.R.S. § 23–392(A) mandates compensation be paid.

enginemen not working during mealtime merely because continuously responsible for safety of boat); *Bowling v. United States*, 181 Ct.Cl. 968 (1967) (civilian police officers who could not leave shipyard and were on call, but otherwise unrestricted, found not to be on duty for meal period); *Rapp v. United States* (duty officers for civil defense agency entitled to compensation only for service done at office, not served at home); *Bantom v. United States*, 165 Ct.Cl. 312 (1964) (civilian security officers not entitled to compensation for lunch period where officers only had to inform supervisor of lunch break and where they could be reached, plus being subject to call for emergencies). We choose not to follow the decision in *Erickson v. City of Waltham*, which appears to have involved similar restrictions, though not necessarily to the same degree, believing under the facts here the plaintiff class was working during its mealtime.

The undisputed facts compel the conclusion here that the mealtime break afforded the uniformed officers of the patrol and traffic divisions was predominately provided for the employer's benefit, rather than the employees'.

## II. MONEY DAMAGES

■ On appeal the City of Tempe contends that the trial court erred in awarding the plaintiff class money damages. While A.R.S. § 23–392(A) provides an option to an employer faced with the obligation of compensating an employee for overtime, the trial court found that the City had already elected to pay money damages.

Tempe Ordinance no. 636, rule 17, § 12 states:

Except for employees who are exempt from receipt of overtime pay, no compensatory time for overtime worked, rest or lunch periods not taken, or for any other purpose, is authorized.

The City, nevertheless, argues that it should be free to offer compensatory time off as payment pursuant to A.R.S. § 23–392(A)(2). It is the City's position that if the ordinance providing mealtime is non-compensable time is preempted, then this provision should be similarly preempted. Alternatively it is argued that this election was not intended to apply to a court lump sum award of backpay, and we should therefore relieve the City of its election.

The City's arguments are frivolous. The election made by the ordinance in question is not preempted by A.R.S. § 23–392(A), but in effect implements the statute. Nor can we relieve the City from its unequivocal election. Thus, we do not need to reach the other arguments advanced in support of the lower court's ruling.

## III. ATTORNEYS' FEES

■ The trial court awarded the plaintiff class its attorneys' fees totaling $67,-500 pursuant to A.R.S. § 12–341.01. The City contends on appeal that the plaintiff class failed to timely assert its claim for attorneys' fees under A.R.S. § 12–341.01 and, therefore, the lower court erred in awarding any fees. Alternatively, the City argues that the trial court awarded an excessive amount.

The complaint first requested the following relief:

With respect to the First and Second Causes of Action:

\*     \*     \*     \*     \*     \*

(4) This Court award to Plaintiffs their reasonable attorneys' fees ....

On the second cause of action, for an accounting and damages, the complaint specifically requested attorneys' fees pursuant to A.R.S. § 23–355.[7]

---

7. A.R.S. § 23–355 stated at the time this suit was instituted:

  If an employer, in violation of the provisions of this chapter, shall fail to pay wages due any employee, such employee may recover in a civil action against an employer or former employer an amount which is treble the amount of the unpaid wages, together with costs and reasonable attorneys' fees to be allowed by the court on the basis of time and effort expended by counsel in behalf of the plaintiff employee.

  Laws 1980, ch. 202, § 6. The law was amended in 1980 by deleting the remainder of the para-

The complaint was filed on March 14, 1980. Later in 1980 the Arizona Legislature amended A.R.S. § 23–355, to delete the allowance of attorneys' fees. Laws 1980, ch. 202, § 6. On September 17, 1980, the trial court granted partial summary judgment in favor of the plaintiff class on the issue of liability. Thereafter, in their cross-motion for summary judgment on the issue of damages, the plaintiff class asserted that they were entitled to recover attorneys' fees pursuant to A.R.S. § 12–341.01, dealing with suits arising out of a contract. The City responded that the plaintiff class failed to timely notify the City of its claim under A.R.S. § 12–341.01 as required by then rule 3.6(e)(1) [now 3.7(e)(1) ], Maricopa County Superior Court Local Rules.[8]

On appeal the plaintiff class argues that the City of Tempe failed to timely raise its objection to the timeliness of the notice of intention to seek attorneys' fees pursuant to A.R.S. § 12–341.01. The City raised the objection in its response to the plaintiffs' cross-motion for summary judgment on damages. Alternatively, the plaintiff class asserted that the City suffered no prejudice.

Although the plaintiff class set forth its claim for attorneys' fees in its complaint, it did not specifically refer to A.R.S. § 12–341.01. However, the City has neither been surprised nor has it been prejudiced. If the City had any doubt as to the nature of or authority for the claim for attorneys' fees, it could have initiated appropriate discovery procedures. Rule 3.7(e), Maricopa County Superior Court Local Rules, does not mandate a specific reference to A.R.S. § 12–341.01 which, if neglected, bars a claimant from what would otherwise be an appropriate claim for attorneys' fees. In any event, there has been substantial compliance with rule 3.7(e)(1).

Additionally, the minute order of September 17, 1980 granting partial summary judgment in favor of the plaintiff class was

not even an interlocutory *judgment*. It was only a minute order disposition of this issue later to be made final in an interlocutory judgment or in a final judgment. The claim for attorneys' fees under A.R.S. § 12–341.01 was made "prior to the determination ... on the merits of the case." The merits of this case involved both a determination on the question of liability and a determination on the question of damages. The minute order relating to partial summary judgment resolved the liability issue. The claim for attorneys' fees specifically mentioning A.R.S. § 12–341.01 was appropriately made in advance of the disposition of the damages issue. The claim for attorneys' fees specifically mentioning A.R.S. § 12–341.01 was timely.

The City also claims the award of attorneys' fees was in excess of the trial court's jurisdiction. The City bases this claim on the record which reflects appellees' counsel had entered into contingent fee agreements with three named members of the plaintiff class (appellants Prendergast, Canning and Raether). Assuming prejudgment interest as a portion of recovery these appellees have agreed to pay their attorneys a total of $2,779.93.

The attorneys' fees were awarded by the trial court on a theory of implied contract pursuant to A.R.S. § 12–341.01. The City relies on that portion of subsection (B) which states the "award may not exceed the amount paid or agreed to be paid." Thus it concludes that the award of $67,500 was in excess of the agreed $2,779.93.

The appellees point out that appellants did not raise this argument until long after the award of attorneys' fees was made. Appellees also point out that the unnamed members of appellee class have no fee agreement with the attorneys.

We hold that the City's argument that attorneys' fees be limited to the amount of

---

graph beginning with "together with costs ...." *Id.*

**8.** This rule provides:
A claim for attorneys' fees pursuant to A.R.S. § 12–341.01 shall be made in the pleadings, in

the joint pretrial statement, or by written notice filed and served prior to the trial or other determination on the merits of the cause.

the contingency fee with the *named* plaintiffs is without merit. The trial court made the award based upon evidence presented including the fee contracts which provided that the action would be maintained as a class action with fees to be approved by the court. The trial court was well within the limitations of A.R.S. § 12–341.01(B) as it awarded less than one third of the total recovery as attorneys' fees. *See Sparks v. Republic National Life Ins. Co.*, 132 Ariz. 529, 647 P.2d 1127 (1982), *cert. denied*, 459 U.S. 1070, 103 S.Ct. 490, 74 L.Ed.2d 632. We affirm the award of attorneys' fees.

### IV. PREJUDGMENT INTEREST

■ The lower court awarded the plaintiff class prejudgment interest commencing on the date compensation should have been paid. The City contends that such an award was erroneous.

■ Where a claim is liquidated the awarding of prejudgment interest is mandatory, *In re Estate of Estes*, 134 Ariz. 70, 654 P.2d 4 (App.1982), despite even a good faith dispute over liability. *Id.* To determine whether a claim is liquidated we must inquire whether "the claim [is] one which 'makes it possible to compute the amount with exactness without reliance upon opinion or discretion.' " *Id.* at 81, 654 P.2d at 15, *quoting Costanzo v. Stewart Title & Trust of Phoenix*, 23 Ariz.App. 313, 317, 533 P.2d 73, 77 (1975).

Here the evidence of damages furnished data which makes it possible to accurately compute the amount owing, without relying on opinion or discretion. *See Costanzo v. Stewart Title & Trust of Phoenix.* The City argues that the statute provided an option on the method of compensation, and therefore, the claim was not liquidated. This, however, ignores the City's election to compensate only through monetary payment. The trial court properly awarded prejudgment interest.

The judgment is affirmed.

CORCORAN and FROEB, JJ., concur.