24 P.3d 614

Eric HAHN, on his own behalf, and on behalf of all others similarly situated, Plaintiffs/Appellants,

v.

PIMA COUNTY, a body politic; Mike Boyd in his official capacity as a member of the Pima County Board of Supervisors; Dan Eckstrom in his official capacity as a member of the Pima County Board of Supervisors; Sharon Bronson in her official capacity as a member of the Pima County Board of Supervisors; John Even in his official capacity as a member of the Pima County Board of Supervisors; Raul M. Grijalva in his official capacity as a member of the Pima County Board of Supervisors; and Clarence Dupnik, Sheriff of Pima County, Defendants/Appellees.

Kevin Acorn, on his own behalf, and on behalf of all others similarly situated, Plaintiffs/Appellants,

v.

Pima County, a body politic; Mike Boyd in his official capacity as a member of the Pima County Board of Supervisors; Dan Eckstrom in his official capacity as a member of the Pima County Board of Supervisors; Sharon Bronson in her official capacity as a member of the Pima County Board of Supervisors; John Even in his official capacity as a mem-

ber of the Pima County Board of Supervisors; Raul M. Grijalva in his official capacity as a member of the Pima County Board of Supervisors; and Clarence Dupnik, Sheriff of Pima County, Defendants/Appellees.

No. 2CA–CV 00–0200.

Court of Appeals of Arizona,
Division 2, Department A.

May 31, 2001.

As Corrected June 13, 2001.

Yen, Pilch & Komadina, P.C., By Caroline A. Pilch and Phil S. Flemming, Phoenix, for Plaintiffs/Appellants.

Gabroy, Rollman & Bossé, P.C., By Lyle D. Aldridge, Tucson, for Defendants/Appellees.

## OPINION

PELANDER, J.

¶ 1 In these consolidated actions, plaintiffs/appellants Kevin Acorn and Eric Hahn, Pima County corrections officers who sought overtime compensation for unpaid lunch breaks, appeal from the trial court's entry of summary judgment in favor of defendants/appellees Pima County and various in-

dividual county officials (collectively, the county). We affirm.

## BACKGROUND

¶ 2 We view the facts and all reasonable inferences therefrom in the light most favorable to plaintiffs, the parties against whom summary judgment was entered. *Bothell v. Two Point Acres, Inc.*, 192 Ariz. 313, ¶ 2, 965 P.2d 47, ¶ 2 (App.1998). Before October 1, 1996, county corrections officers such as plaintiffs had eight and one-half hour work shifts, and the county treated one-half hour as an unpaid lunch break. During their lunch break, corrections officers were at least implicitly required to carry their portable radios and service revolvers if they possessed one; were expected to respond to any emergency situations or criminal activity that might arise and to any citizen inquiries; and were subject to call and interruptions from fellow employees, inmates, or visitors to the jail facility. In addition, as a practical matter, corrections officers remained in uniform during lunch breaks.

¶ 3 In their complaints, filed on behalf of themselves and other similarly situated present and former county employees, Acorn and Hahn alleged that the county's failure to compensate them for the unpaid lunch breaks violated the overtime provisions of the Fair Labor Standards Act (the FLSA), 29 U.S.C. §§ 201 through 219.[1] Approximately 300 other individuals consented to join the action as plaintiffs pursuant to 29 U.S.C. § 216(b). The county moved for summary judgment, contending that, "[d]espite the restrictions placed upon Plaintiffs during their meal periods," plaintiffs "ha[d] not alleged or set forth any facts that demonstrate their meal period activities were for the predominate [sic] benefit of Pima County." In granting the county's motion, the trial court ruled:

> Although plaintiffs were subject to being interrupted to perform job duties during their lunch breaks, there is no evidence that they spent a predominant amount of

their lunch breaks in the actual performance of job duties that benefitted their employer. Rather, plaintiff[s'] lunch breaks were primarily occupied by their procurement and consumption of food, and, therefore, they were "completely relieved" from duty during lunch breaks and are not entitled to overtime compensation for unpaid meal periods. *Lamon v. City of Shawnee*, 972 F.2d 1145 (10th Cir.1992).

This appeal followed the trial court's subsequent denial of plaintiffs' motion for a new trial.

## DISCUSSION

¶ 4 "On appeal from a summary judgment, we must determine *de novo* whether there are any genuine issues of material fact and whether the trial court erred in applying the law." *Bothell*, 192 Ariz. 313, ¶ 8, 965 P.2d 47, ¶ 8. We find neither triable factual issues to preclude summary judgment nor any legal error in the trial court's ruling.

¶ 5 Section 7(a) of the FLSA requires employers to pay overtime compensation at one and a half times the regular rate to employees who work more than forty hours in a work week. 29 U.S.C. § 207(a)(1). Section 7(k), however, permits public agencies engaged in law enforcement activities to calculate overtime for law enforcement personnel, "including security personnel in correctional institutions," based on a twenty-eight-day work period rather than the standard seven-day period. 29 U.S.C. § 207(k). Under that section, the public employer "must pay overtime only when employees have 'tours of duty which in the aggregate exceed' 171 hours in a 28 day period." *Leahy v. City of Chicago*, 96 F.3d 228, 230 (7th Cir.1996), *quoting* 29 U.S.C. § 207(k)(1). *See also Roy v. County of Lexington, South Carolina*, 141 F.3d 533, 538–39 (4th Cir.1998). "Although a state or local government, in its employment of law enforcement or fire protection personnel, may choose to conform to the maximum hour and overtime provisions contained in § 207(a)(1), the governmental

---

1. Plaintiffs' complaints also alleged claims under A.R.S. § 23–392, relating to overtime compensation for certain law enforcement activities. On appeal, however, plaintiffs only address their federal law claims and only challenge the trial court's ruling relating thereto, apparently having abandoned any state law claims.

entity may adopt an alternative scheme available under § 207(k)." *Lamon v. City of Shawnee,* 972 F.2d 1145, 1150 (10th Cir. 1992).

■ ¶ 6 Relying primarily on two Kansas District Court cases, *Wahl v. City of Wichita,* 725 F.Supp. 1133 (D.Kan.1989), and *Nixon v. City of Junction City,* 707 F.Supp. 473 (D.Kan.1988), plaintiffs contend "the trial court erroneously applied a standard that relates to tour of duty regimes under § 207(k) of the FLSA instead of the standard that applies to those individuals who work a 40–hour work week." The incorrect standard, according to plaintiffs, is a Department of Labor regulation that provides in pertinent part:

> (b) If a public agency elects to use the section 7(k) exemption, the public agency may, in the case of law enforcement personnel, exclude meal time from hours worked on tours of duty of 24 hours or less, provided that the employee is completely relieved from duty during the meal period, and all the other tests in § 785.19 of this title are met. On the other hand, where law enforcement personnel are required to remain on call in barracks or similar quarters or are engaged in extended surveillance activities (e.g., "stakeouts"), they are not considered to be completely relieved from duty, and any such meal periods would be compensable.

29 C.F.R. § 553.223(b).[2]

¶ 7 Because the county established and employed plaintiffs in "a 40–hour work week schedule," plaintiffs argue, the Department of Labor's administrative standard set forth in 29 C.F.R. § 785.19 controls and applies. That regulation provides:

> (a) Bona fide meal periods. Bona fide meal periods are not worktime. Bona fide meal periods do not include coffee breaks or time for snacks. These are rest periods. The employee must be completely relieved from duty for the purposes of

eating regular meals. Ordinarily 30 minutes or more is long enough for a bona fide meal period. A shorter period may be long enough under special conditions. The employee is not relieved if he is required to perform any duties, whether active or inactive, while eating. For example, an office employee who is required to eat at his desk or a factory worker who is required to be at his machine is working while eating . . . .

> (b) Where no permission to leave premises. It is not necessary that an employee be permitted to leave the premises if he is otherwise completely freed from duties during the meal period.

*Id.* Pursuant to that regulation, first promulgated in 1956, *see Roy,* 141 F.3d at 544, plaintiffs contend the county had to compensate them for their half-hour lunch breaks because they were not "completely relieved from duty for the purposes of eating regular meals." 29 C.F.R. § 785.19(a).

■ ¶ 8 Contrary to plaintiffs' argument, the trial court did not apply an incorrect standard in determining their entitlement under the FLSA to overtime compensation for the daily, half-hour meal periods. Although plaintiffs attempt to distinguish § 785.19 from § 553.223(b), contending that only the former applies to forty-hour-work-week employees such as they and that it requires a different analysis and result, we find no meaningful distinction between those regulations. As the court in *Lamon* noted, "contrasting of the two sections . . . does not mean that the 'completely relieved from duty' standard as used in [§ 785.19] should necessarily take on a different meaning than that of [§ 553.223(b) ]." 972 F.2d at 1158 n. 18. *See also Barefield v. Village of Winnetka,* 81 F.3d 704, 710 n. 1 (7th Cir.1996) (although separate regulations govern § 7(a) and § 7(k) employees, the "predominant benefit test applies to both"). That § 553.223(b) expressly refers to and requires compliance with "all the other tests in § 785.19" also

2. The Department of Labor interpretive regulations "do[ ] not have the force of law," but may guide and serve as "persuasive authority" for courts. *Reich v. Southern New England Telecomm. Corp.,* 121 F.3d 58, 65 (2d Cir.1997). We also note that plaintiffs' opening brief apparently misquotes § 553.223(b) by adding the following sentence that does not appear in its text: "This means that when the employee's time is not spent predominantly for the benefit of the employer, it is not compensable."

negates plaintiffs' proffered distinction. Moreover, neither the trial court nor the county based its ruling or argument on § 553.223(b).

¶ 9 The Department of Labor itself has rejected plaintiffs' broad, literal construction of the "completely relieved from duty" language in § 785.19. Indeed, one of the cases the Department of Labor originally cited as the source of that language stated: "Time spent predominantly for the employer's benefit during a period, although designated as a lunch period or under any other designation, nevertheless constitutes working time compensable under the provisions of the Fair Labor Standards Act." *F.W. Stock & Sons, Inc. v. Thompson,* 194 F.2d 493, 496–97 (6th Cir.1952), *quoting Thompson v. F.W. Stock & Sons, Inc.,* 93 F.Supp. 213, 216 (E.D.Mich. 1950). *See also Reich v. Southern New England Telecomm. Corp.,* 121 F.3d 58, 63 (2d Cir.1997) (although it was "not open to reasonable question that [the employer] did not completely relieve its outside craft employees from duty during their lunch break," Secretary of Labor "concede[d] that the test [under § 785.19] is not so rigid"); *Roy,* 141 F.3d at 544 ("[A]lthough § 785.19(a) can be read to require that an employer may only exclude meal periods from compensation if it permits an employee to cease all duties of any kind during such periods, the Secretary [of Labor] did not seemingly intend such a broad construction.").

¶ 10 More recently, most federal courts have applied a "predominant benefit" test, under which meal periods are considered "work" and, therefore, compensable, only when an employee predominantly spends the time performing duties for the employer's benefit. *See, e.g., Bernard v. IBP, Inc.,* 154 F.3d 259, 264–65 (5th Cir.1998) ("The critical question is whether the meal period is used predominantly or primarily for the benefit of the employer or for the benefit of the employee."); *Roy,* 141 F.3d at 545 ("[T]he most appropriate standard for compensability is a 'flexible and realistic' one where we determine whether, on balance, employees use mealtime for their own, or for their employer's benefit."), *quoting Hill v. United States,* 751 F.2d 810, 814 (6th Cir.1985); *Reich,* 121

F.3d at 64 ("To be consistent with the FLSA's use of the term 'work' as construed in [United States Supreme Court cases], we believe § 785.19 must be interpreted to require compensation for a meal break during which a worker performs activities predominantly for the benefit of the employer."); *Leahy,* 96 F.3d at 230–31 n. 2; *Bates v. Dep't of Corrections,* 81 F.3d 1008, 1011 (10th Cir. 1996); *Avery v. City of Talladega,* 24 F.3d 1337, 1345 (11th Cir.1994); *Henson v. Pulaski County Sheriff Dep't,* 6 F.3d 531, 533–34 (8th Cir.1993); *Alexander v. City of Chicago,* 994 F.2d 333, 337 (7th Cir.1993); *Lamon,* 972 F.2d at 1155–57.

¶ 11 Although distinguishable in its result because of collective bargaining issues not present here, *Leahy* is particularly instructive. Chicago police officers in that case sought overtime compensation under the FLSA for meal periods, during which they were subject to the following restrictions:

> [O]fficers must receive permission from a dispatcher to take a meal period; officers must receive permission from a supervisor to leave their assigned districts during meal periods; officers must remain in uniform and comply with various rules governing conduct while in uniform; no more than two officers may congregate during a meal period without prior permission; officers in two-person units must take their meals at the same time; officers must be available to end their meals upon request; officers must respond to emergencies and requests for assistance by the public; and officers must be available by radio to the dispatcher.

*Leahy,* 96 F.3d at 231. When the officers took their meal breaks, however, they were primarily engaged in the personal activity of consuming meals. Noting that it "and other circuit courts ha[d] adopted the 'predominant benefit' test for determining whether meal periods constitute compensable work time under the FLSA," the court in *Leahy* stated that "[a]n employee is considered to be completely relieved from duty during a meal period when the employee's time is not spent predominantly for the benefit of the employer." *Id.* at 231 n. 2. As the court pointed out:

The FLSA requires compensation for meal periods during which a police officer cannot comfortably and adequately spend the mealtime because the officer's time or attention is devoted primarily to official responsibilities. If during meal periods a police officer's time and attention are primarily occupied by a private pursuit, presumably the procurement and consumption of food, then the officer is completely relieved from duty and is not entitled to compensation under the FLSA.

*Id.* (citations omitted). The court ultimately described and rejected the officers' position as follows: "[B]ecause some officers on some days miss all or part of their meal periods, the plaintiffs want all meal periods to be compensable work time. That would brook a result we cannot sanction, where officers might be paid for doing nothing more than eating during their meal periods." *Id.* at 232.

■ ¶ 12 We reach that same conclusion here. "The central issue in mealtime cases is whether employees are required to 'work' as that term is understood under the FLSA." *Reich,* 121 F.3d at 64. Although the FLSA does not define "work," the Supreme Court has defined that term to mean "physical or mental exertion (whether bur densome or not) controlled or required by the employer and pursued necessarily and primarily for the benefit of the employer and his business." *Tennessee Coal, Iron & R.R. Co. v. Muscoda Local No. 123,* 321 U.S. 590, 598, 64 S.Ct. 698, 703, 88 L.Ed. 949, 956 (1944). Application of the "predominant benefit" test is consistent with that concept and often entails fact-intensive determinations not appropriate for summary judgment. *See Bernard,* 154 F.3d at 265; *Reich,* 121 F.3d at 64. Because plaintiffs neither established nor previously argued that they spent their mealtime for the "predominant benefit" of the county, however, the trial court properly rejected their claims as a matter of law.

■ ¶ 13 In the trial court and in their appellate briefs, plaintiffs only contended that, during lunch breaks, they were not "completely relieved from duty," which, they argued, was the controlling and applicable standard. For the first time at oral argu-

ment, however, plaintiffs contended that the record presents triable issues of material fact on whether their lunch break activities predominantly benefited the county. We reject this argument for two reasons. First, "[t]he failure to raise an issue either at the trial level or in briefs on appeal constitutes a waiver of the issue." *Van Loan v. Van Loan,* 116 Ariz. 272, 274, 569 P.2d 214, 216 (1977). *See also Johnson v. Hispanic Broadcasters of Tucson, Inc.,* 196 Ariz. 597, ¶ 8, 2 P.3d 687, ¶ 8 (App.2000). Second, the evidence on which plaintiffs rely does not create a genuine issue of material fact under the predominant benefit test so as to preclude summary judgment.

¶ 14 In support of a contrary result, plaintiffs primarily point to statements in their affidavits that they "and other corrections officers were required to perform job related duties during [their] lunch breaks while eating." The affidavits also established the facts set forth in ¶ 2 above. As the county correctly argues, however, plaintiffs' affidavits merely established that *"some* corrections personnel performed job duties during *some* meal periods, and were expected to do so, when circumstances required," but failed to establish that plaintiffs or other corrections officers were *"predominantly* engaged in work activities for the benefit of Pima County during the meal breaks." Because plaintiffs' affidavits lack the specificity and detail necessary to create a triable issue of fact on that pivotal element of their claim, they do not preclude summary judgment. *See* Ariz. R. Civ. P. 56(e), 16 A.R.S. (affidavits filed in opposition to summary judgment motion "must set forth specific facts showing that there is a genuine issue for trial"); *Harmon v. Szrama,* 102 Ariz. 343, 345, 429 P.2d 662, 664 (1967).

¶ 15 At most, the record reflects that plaintiffs "enjoyed something less than unfettered freedom during meal periods," as the county argues. Although the county imposed certain expectations and informal requirements on plaintiffs during lunch breaks, the record does not reflect how often or to what extent such theoretical restrictions actually interfered with plaintiffs' primary lunch-break activity: eating. Indeed, a long-time county

corrections officer, whose testimony supported plaintiffs in many other respects, acknowledged that corrections officers "actually" and "primarily consume meals during their meal periods." And, again, before oral argument, plaintiffs did not contend or even suggest that the evidence satisfies the "predominant benefit" test.

¶ 16 To the extent *Wahl* and *Nixon* arguably support plaintiffs' position, we reject those cases. Moreover, the Tenth Circuit Court of Appeals has distinguished and implicitly questioned those decisions, while clearly adopting and applying the "predominant benefit" test. *Lamon,* 972 F.2d at 1158 n. 18; *Armitage v. City of Emporia,* 982 F.2d 430, 431–32 (10th Cir.1992). We also find no valid basis or persuasive authority for applying the "predominant benefit" test only when an employee has a "tour of duty" or "flex time" schedule, rather than a forty-hour work-week schedule, as plaintiffs did here.

¶ 17 Finally, *Prendergast v. City of Tempe,* 143 Ariz. 14, 691 P.2d 726 (App. 1984), on which plaintiffs also rely, does not alter our approach or conclusion. The "undisputed facts" in that case compelled Division One of this court to conclude that "the mealtime break afforded the uniformed officers of the patrol and traffic divisions was predominantly provided for the employer's benefit, rather than the employees'." *Id.* at 21, 691 P.2d at 733. Unlike plaintiffs, the officers in *Prendergast* "were required," inter alia, to "remain in uniform," "wear their service revolvers when appearing in public," "seek approval prior to taking meal breaks," "obtain permission to take such breaks outside their assigned duty areas," and "not to carry out private business while on duty." *Id.* at 20, 691 P.2d at 732. And, unlike this case, *Prendergast* involved state law claims under A.R.S. § 23–392(A). More importantly, the court there noted that "[t]he proper and overriding test is whether the waiting time in issue is predominantly for the employer's benefit or for the employee's benefit," *id.* at 19, 691 P.2d at 731, the same test we adopt and apply here. The distinguishable facts presented in *Prendergast* to satisfy that test are lacking in this case.

¶ 18 On this record, "reasonable people" could not find that plaintiffs primarily performed "work" during their lunch breaks for the predominant benefit of the county. *See Orme School v. Reeves,* 166 Ariz. 301, 309, 802 P.2d 1000, 1008 (1990). Accordingly, the trial court's summary judgment in favor of the county is affirmed.

CONCURRING: J. WILLIAM BRAMMER, JR., Presiding Judge, and M. JAN FLÓREZ, Judge.