NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

KEITH A. WEIDERT, et al., *Plaintiffs/Appellants*,

*v.*

PRECISION AIR & PLUMBING, INC., *Defendant/Appellee*.

No. 1 CA-CV 22-0439
FILED 4-6-2023

Appeal from the Superior Court in Maricopa County
No. CV2020-054698
The Honorable Pamela S. Gates, Judge

**AFFIRMED**

COUNSEL

Mengedoth Law PLLC, Scottsdale
By Paul B. Mengedoth
*Counsel for Plaintiffs/Appellants*

Ellsworth Cobb, PLC, Phoenix
By Richard L. Cobb
*Co-Counsel for Defendant/Appellee*

Dentons US LLP, Phoenix
By Karl M. Tilleman, Erin Norris Bass, Douglas J. Janicik
*Co-Counsel for Defendant/Appellee*

---

**MEMORANDUM DECISION**

Presiding Judge Samuel A. Thumma delivered the decision of the Court, in which Judge Randall M. Howe and Judge Anni Hill Foster joined.

---

**T H U M M A**, Judge:

¶1         Plaintiffs Keith and Dianne Weidert appeal from the grant of a motion for judgment on the pleadings in favor of defendant Precision Air & Plumbing, Inc. Because plaintiffs have shown no error, the judgment is affirmed.

**FACTS AND PROCEDURAL HISTORY**

¶2         In 2019, plaintiffs saw a television interview of defendant's manager recommending that homeowners regularly inspect their air conditioning (AC) units and mentioning a service check promotion. Plaintiffs contacted defendant for a service check of their AC unit at their Maricopa County home. At plaintiffs' request, one of defendant's technicians came to their home in August 2019. After the inspection, the technician first said the AC unit was "working just fine." The technician then tripped a circuit breaker and, after trying to reset it, the AC unit no longer worked. Telling plaintiffs they would not be charged for the inspection, the technician scheduled a follow-up by one of defendant's other technicians.

¶3         During that follow-up, a different technician said the AC unit compressor was frozen and that it would be more cost-effective to replace the unit. Plaintiffs agreed to purchase a replacement unit for $10,231. Plaintiffs signed a one-page contract and paid defendant the full purchase price using a credit card. The contract stated that if plaintiffs "cancel any scheduled work, there is a 20% non-refundable charge," repeating that "there will be a 20% non-refundable amount for all scheduled work."

¶4         The contract stated the new AC unit would be installed two days later. However, the day after signing the contract, plaintiffs told defendant they were cancelling the purchase and were reversing the credit card charge. Given plaintiffs' cancellation, defendant responded it would retain 20 percent of the purchase price ($2,046.20), purportedly saying it

was a "restocking fee." Plaintiffs then hired a different contractor to fix the circuit breaker, which apparently allowed the original AC unit to operate.

¶5 Plaintiffs then filed this case, alleging two counts. Count I alleged defendant failed to provide notice of plaintiffs' right to cancel their purchase within three business days, claiming a violation of Arizona's Consumer Fraud Act (CFA). *See* A.R.S. §§ 44-1521 to -1534 (2023).[1] As relevant here, this CFA claim turned on an assertion that defendant violated a Federal Trade Commission rule requiring that a purchaser of any "door-to-door sale" had three business days to cancel the purchase and that any purchase contract had to properly disclose that right. *See* 16 C.F.R. § 429.1 (1972) (the FTC Rule).[2] Count II alleged defendant failed to provide "clear and conspicuous disclosure of the restocking fee charges" in violation of the CFA and A.R.S. § 44-1377 ("Disclosure of restocking fee; enforcement; definition"). The complaint was a putative class action, seeking certification of: (1) a home solicitation sales notice class and (2) a restocking fee class.

¶6 After answering, defendant moved for judgment on the pleadings or to strike the class action allegations. *See* Ariz. R. Civ. P. 12(c) & (f). After full briefing and oral argument, the superior court granted defendant's motion. For Count I, the court determined defendant's sale did not violate the FTC Rule, which excluded transactions where the buyer "initiated the contact and specifically requested the seller to visit the buyer's home." Because the CFA claim in Count I turned on whether defendant violated the FTC Rule, the court held the claim failed. For Count II, the court determined that defendant's retention of 20 percent of the contract price was a "cancellation fee for scheduled work," not a "restocking fee," which is defined as a "fee charged by a business for restocking of the good purchased *on its return or exchange*." A.R.S. § 44-1377 (emphasis added). The court also concluded the case could not proceed as a class action "because the individualized issues predominate."

¶7 Defendant then moved for attorneys' fees under A.R.S. § 12-341.01, seeking more than $39,000, which plaintiffs opposed as untimely. After considering the factors identified in *Associated Indem. Corp. v. Warner*, 143 Ariz. 567, 570 (1985), the court granted the motion in part, awarding

---

[1] Absent material revisions after the relevant dates, statutes and rules cited refer to the current version unless otherwise indicated.

[2] Count I also alleged a violation of Arizona's Home Solicitation Sales Act. *See* A.R.S. §§ 44-5001 to -5008. The superior court dismissed that aspect of Count I, and plaintiffs do not appeal from that ruling.

defendant $15,000 in fees plus taxable costs. This court has jurisdiction over plaintiffs' timely appeal from the final judgment under Article 6, Section 9, of the Arizona Constitution and A.R.S. §§ 12-120.21(A)(1) and -2101(A)(1).

## DISCUSSION

**¶8** Plaintiffs argue the court erred in granting defendant's motion for judgment on the pleadings, concluding the case could not proceed as a class action and awarding defendant attorneys' fees. Plaintiffs also argue the court erred by not granting them leave to amend. In reviewing a grant of judgment on the pleadings, this court accepts the well-pled factual allegations as true and reviews the legal conclusions de novo. *See Muscat by Berman v. Creative Innervisions LLC*, 244 Ariz. 194, 197 ¶ 7 (App. 2017). This court reviews a ruling on class certification, an award of attorneys' fees and a ruling on a motion for leave to amend for an abuse of discretion. *ESI Ergonomic Sols., LLC v. United Artists Theatre Cir., Inc.*, 203 Ariz. 94, 98 ¶ 11 (App. 2002); *In re Conservatorship for Mallet*, 233 Ariz. 29, 31 ¶ 7 (App. 2013); *Tumacacori Mission Land Dev., Ltd. v. Union Pac. R.R. Co.*, 231 Ariz. 517, 519 ¶ 4 (App. 2013).

## I. Plaintiffs' Complaint Failed to State a Claim Upon Which Relief Can Be Granted.

### A. Count I – The FTC Rule.

**¶9** Count I turns on whether defendant had to provide plaintiffs a right to cancel their purchase within three days and, if so, whether defendant properly did so. Although starting with the CFA, resolving that issue turns on the FTC Rule. The CFA provides:

> The act, use or employment by any person of any deception, deceptive or unfair act or practice, fraud, false pretense, false promise, misrepresentation, or concealment, suppression or omission of any material fact with intent that others rely on such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice.

A.R.S. § 44–1522(A). The CFA adds that, "in construing subsection A, that the courts may use as a guide interpretations given by the federal trade

commission and the federal courts." A.R.S. § 44–1522(C); *see also State ex rel. Babbitt v. Goodyear Tire & Rubber Co.*, 128 Ariz. 483, 485 (App. 1981) (citing FTC rule to guide CFA analysis).

**¶10**      Count I alleges defendant failed to provide notice of a right to cancel the purchase in violation of the FTC Rule. The FTC Rule requires a seller, for "any door-to-door sale," to provide the buyer three business days to cancel a purchase, and to provide written notice of that right. *See* 16 C.F.R. § 429.1(a) & (b).[3] It is undisputed that the FTC Rule is "a guide" under the CFA. *See* A.R.S. § 44-1522(C). The FTC Rule, however, does not apply to transactions where:

> *the buyer has initiated the contact* and specifically requested the seller to visit the buyer's home *for the purpose of repairing or performing maintenance* upon the buyer's personal property. If, in the course of such a visit, the seller sells the buyer the right to receive additional services or goods *other than replacement parts necessarily used in performing the maintenance or in making the repairs*, the sale of those additional goods or services would not fall within this exclusion. . .

16 C.F.R. § 429.0(a)(5) (emphasis added).

**¶11**      Plaintiffs concede they initiated the contact with defendant and asked defendant to visit their home. Plaintiffs argue, however, that this exception to the FTC Rule does not apply because defendant: (1) did not visit plaintiffs' home "for the purpose of repairing or performing maintenance;" and (2) sold plaintiffs goods "other than replacement parts necessarily used in performing the maintenance or in making the repairs." For several reasons, these arguments fail to show that the court erred in concluding Count I failed as a matter of law.

---

[3] Because plaintiffs are pressing a CFA claim that relies, in its entirety, on the FTC Rule, this court need not (and expressly does not) address defendant's argument that there is no private cause of action under the FTC Rule. *See, e.g., Jeter v. Credit Bureau, Inc.*, 760 F.2d 1168, 1174 n.5 (11th Cir. 1985).

**¶12**        *First*, the FTC Rule is limited to "any door-to-door sale." 16 C.F.R. § 429.1. There is no suggestion that defendant's visits to plaintiffs' home, at plaintiffs' request, involved a "door-to-door sale" under the FTC Rule. *See* 16 C.F.R. § 429.0(a) (defining "door-to-door sale").

**¶13**        *Second*, the FTC Rule does not apply when "the buyer has initiated the contact and specifically requested the seller to visit the buyer's home." 16 C.F.R. § 429.0(a)(5). Here, plaintiffs initiated the contact with defendant.

**¶14**        *Third*, plaintiffs argue they never "specifically requested" that defendant come to their home to repair their AC unit. But plaintiffs concede that they "specifically requested" that defendant "come perform an inspection and service their unit as needed during the inspection." The complaint alleges plaintiffs scheduled the inspection so that defendant could "perform service checks" and ensure "their [AC] unit was working just fine." Plaintiffs have not shown that, in substance, their allegations are something other than specifically requesting defendant to visit their home to repair or perform maintenance on their AC unit. *Cf. McCarthy Integrated Sys., LLC v. Evoqua Water Techs., LLC*, 240 Ariz. 366, 369 ¶ 10 (App. 2016) (explaining statutory words and phrases typically are construed according to their ordinary meanings). Plaintiffs soliciting defendant to come to their home to service their AC unit is conduct that falls within the "repairing or performing maintenance" exception to the FTC Rule.

**¶15**        *Finally*, plaintiffs argue this exception to the FTC Rule does not apply because the sale of a replacement AC unit is an "additional good or service" that was "not just a 'replacement part necessarily used in performing' the initial promotional inspection and potential maintenance." *See* 16 C.F.R. § 429.0(a)(5). But plaintiffs contacted defendant to inspect their AC unit, the inspection revealed the AC unit no longer worked and plaintiffs bought a replacement AC unit as a result. These facts fall within this exception to the FTC Rule. *Cf. Smaldino v. Larsick*, 630 N.E.2d 408, 410–11 (Ohio App. 1993) (reaching the same conclusion on similar facts in addressing a similar provision).

**¶16**        Citing one of various definitions for the word "part" in a 1990 edition of *Black's Law Dictionary*, and comments when the FTC Rule was promulgated in 1972, 37 Fed. Reg. 22,934, 22,947 (Oct. 26, 1972), plaintiffs argue that the replacement of the AC unit does not fall within this exception. When expressing concern about upsales during a home visit -- "in the course of such a visit, the seller sells the buyer the right to receive additional services or goods" -- the FTC noted this exception would "not

permit the seller to replace a furnace." 37 Fed Reg. at 22,947. At that time, however, the FTC noted that "[h]igh-pressure sales tactics are the leading cause for consumer complaints about door-to-door selling." 37 Fed Reg. at 22,937. Here, there was no "door-to-door sale" as used in the FTC Rule. Moreover, there were two visits to plaintiffs' home, both at plaintiffs' request. And the second visit revealed that the AC unit "was frozen and that it would be more cost effective to replace the entire air conditioning unit," meaning the fix was to install a new AC unit. Plaintiffs agreed to that fix during this second visit, signing the written contract to do so. Thus, the concerns expressed when promulgating the FTC Rule are not implicated here. Moreover, and in any event, the CFA itself provides that such FTC commentary is instructive, but not binding. *See Babbitt*, 128 Ariz. at 485 (noting "that the guideline in [an FTC rule] is just that, a guideline").

¶17        On appeal, plaintiffs assert that disputed issues of material fact preclude entry of judgment on the pleadings for defendant on Count I. Plaintiffs, however, did not raise this argument in superior court, meaning it is waived on appeal. *See Odom v. Farmers Ins. Co. of Ariz.*, 216 Ariz. 530, 535 ¶ 18 (App. 2007). Apart from waiver, plaintiffs point to their allegation that they ultimately got their old AC unit operating by paying $265 to fix a circuit breaker. But that allegation was not part of Count I. Count I is solely based on the claim that defendant had to, but failed to, advise plaintiffs "of their right to cancel the transaction until expiration of three business days from the signing of their agreement(s)" under the FTC Rule. Indeed, plaintiffs captioned Count I as "FAILURE TO PROVIDE NOTICE OF RIGHT TO CANCEL," and nowhere mentioned the cost to fix the circuit breaker. On this record, the superior court did not err in concluding Count I failed to state a claim.

## B.    Count II – Restocking Fee.

¶18        Count II alleges defendant violated the CFA when it charged a restocking fee after failing to disclose in "clear and conspicuous" writing "that a restocking fee may apply to the purchase of goods." *See* A.R.S. § 44-1377(B)(1). The written contract for the new AC unit that plaintiffs signed references a 20 percent non-refundable charge if plaintiffs cancelled the scheduled work. When plaintiffs cancelled the contract, defendant retained the 20 percent ($2,046.20) charge.

¶19 On the record presented, the factual nature of this charge is treated inconsistently. Right after quoting the "20% non-refundable charge" provision, the complaint states the contract "contains no provision for a 'restocking fee.'" Elsewhere, however, the complaint alleges the 20 percent charge was "a restocking fee." Defendant's answer agrees that the contract "does not reference a 'restocking fee.'" The answer then denies an allegation that the contract included a "restocking fee," but in the next paragraph admits that defendant "retained $2,046.20 as a restocking fee." The superior court concluded the fee was not a "restocking fee" under A.R.S. § 44-1377 and the CFA, but was a cancellation fee. As plaintiffs conceded at oral argument before this court, whether the charge was a restocking fee is a question of law for the court to decide. The issue here, then, is whether the court erred in reaching that legal conclusion, recognizing the pleadings do not bind the court in making legal determinations. *Cf. Young v. Bishop*, 88 Ariz. 140, 143 (1960) ("[c]onclusions of law are not deemed admitted" in pleadings).

¶20 By statute, a "'restocking fee' means a fee charged by a business for restocking of the good purchased on its return or exchange." A.R.S. § 44-1377(D). As plaintiffs concede, defendant "never delivered or installed" the AC unit. And plaintiffs could not return or exchange a good that had not been delivered. The $2,046.20 was a non-refundable amount that represented a percentage of all scheduled work. Despite the inconsistent nature of how the pleadings treat the matter factually, nothing shows that this was a "restocking fee" under A.R.S. § 44-1377. Nor do plaintiffs challenge the $2,046.20 charge on any other basis. Thus, plaintiffs have shown no error in the court dismissing Count II for failure to state a claim. Given this conclusion, the court need not (and expressly does not) address the superior court's conclusion that class certification would be improper.

## II. The Superior Court Did Not Err in Awarding Attorneys' Fees.

¶21 Plaintiffs argue the superior court erred in awarding defendant $15,000 in attorneys' fees under A.R.S. § 12-341.01 because the answer "did not specifically reference or cite to the statute or a particular contract under which its request for fees was made." As applicable here, a party must seek attorneys' fees in the pleadings. Ariz. R. Civ. P. 54(g)(1). This requirement "puts the opposing party on immediate notice that he or she risks a fees award if the case is not settled before the court decides" the case. *Balestrieri v. Balestrieri*, 232 Ariz. 25, 27 ¶ 8 (App. 2013).

¶22        Defendant's request for attorneys' fees in its answer put plaintiffs on notice that they were at risk of a fee award. There was no mystery about the contract at issue and plaintiffs' complaint sought fees under A.R.S. § 12-341.01. Although the answer would have been clearer if it cited A.R.S. § 12-341.01, the lack of that citation is not fatal to defendant's fee request. *See Prendergast v. City of Tempe*, 143 Ariz. 14, 22 (App. 1984) (affirming fee award despite the plaintiff not specifically citing A.R.S. § 12-341.01 in its pleading because defendant "has neither been surprised nor has it been prejudiced").

¶23        Plaintiffs argue that *Robert E. Mann Const. Co. v. Liebert Corp.*, 204 Ariz. 129 (App. 2003) is "on all fours with the facts here" and shows that the fee award was in error. Not so. Much of *Mann* is inapplicable. To the extent *Mann* is relevant, it means that defendant's answer may have waived a request for fees under the contract, but not under A.R.S. § 12-341.01. *See* 204 Ariz. at 131 ¶ 3 n.1, 133 ¶ 12 (noting answer seeking "reasonable attorneys' fees as provided by law" waived fees under the applicable contract but not under A.R.S. § 12-341.01; "[f]ees pursuant to A.R.S. § 12-341.01 are another matter."). On this record, plaintiffs have not shown the superior court erred in awarding defendant fees under A.R.S. § 12-341.01(A).

## III.    Leave to Amend.

¶24        Plaintiffs argue the superior court should have granted them leave to amend. Plaintiffs, however, did not move for leave to amend. At the end of a footnote on page 16 of their opposition to the motion for judgment on the pleadings, plaintiffs mentioned the possibility of leave to amend. And the conclusion of that same filing asks that defendant's motion for judgment on the pleadings be denied, adding that "alternatively Plaintiff conditionally requests leave to file an amend[ed] Class Action Complaint as the Court may deem necessary." Neither of those passing references is a proper motion that the superior court had to address. *See* Ariz. R. Civ. P. 7.1(a)(1) (requiring, as applicable here, that a request "for an order must be by motion which . . . must be in writing, state with particularity the grounds for granting the motion, and set forth the relief or order sought"). Nor did plaintiffs submit to the court "a copy of the proposed amended pleading" that showed "the respects in which the proposed pleading differs from the existing pleading by bracketed or striking through the text to be deleted and underlying the text to be added," as would be required for a proper motion for leave to amend. *See* Ariz. R. Civ. P. 15(a)(4). Because plaintiffs did not properly seek leave to file an

amended pleading, the superior court was not required to grant them leave to amend sua sponte.

## IV.     Attorneys' Fees on Appeal.

**¶25**        The parties seek their attorneys' fees on appeal under A.R.S. § 12-341.01. Because plaintiffs are not the successful party, their request is denied. In its discretion, this court declines to award defendant its fees on appeal. Defendant, however, is awarded its taxable costs contingent upon compliance with ARCAP 21.

### CONCLUSION

**¶26**        The judgment is affirmed.



AMY M. WOOD • Clerk of the Court
FILED:    AA