836 P.2d 989

Karen HALL, an unmarried woman, Plaintiff–Appellant, Cross Appellee,

v.

Henry James SCHULTE, M.D. and Marjorie Schulte, his wife; Psychotherapy & Human Sexuality, Inc., an Arizona corporation for profit, Defendants–Appellees, Cross Appellants.

No. 1 CA–CV 89–461.

Court of Appeals of Arizona, Division 1, Department E.

Jan. 14, 1992.

Reconsideration Denied March 3, 1992.

Teilborg, Sanders & Parks, P.C. by Frank A. Parks, James W. Kaucher, Phoenix, for defendants-appellees, cross-appellants.

Sparks & Siler, P.C. by Donald O. Loeb, Joe P. Sparks and Kevin T. Tehan, Scotts-

dale, and G. David Gage, Ltd. by G. David Gage, Phoenix, for plaintiff-appellant, cross-appellee.

## OPINION

CLABORNE, Judge.

This appeal presents us with the question of how to apply the proceeds of a settlement agreement to a jury verdict.

Karen Hall ("Hall") sued Dr. Henry Schulte and his wife ("Schulte"), Dr. Helmut Stich and his wife ("Stich"), and the Schulte Institute for Psychotherapy and Human Sexuality, Inc. ("Institute"). Hall claimed that Stich, a psychologist, engaged in sexual improprieties while treating her. Stich occupied office space at the Institute at the time he treated Hall. Hall claimed that Schulte was also negligent and further claimed that Schulte was derivatively liable for Stich's acts under an apparent agency theory. During the trial, Hall entered into an agreement with Stich whereby Stich agreed to pay Hall $500,000 in exchange for a covenant not to execute. Stich's carrier had filed a declaratory relief action to resolve the coverage issues arising out of the Hall lawsuit. The court, as to the issue limiting coverage to less than $500,-000, ruled adversely to the carrier. Thereafter the Hall–Stich agreement was reached. The Hall–Stich agreement contained the following language:

> Hall covenants not to enforce or execute on any judgment entered against Stich, expressly reserving the right to proceed against James and Marjorie Schulte and the Schulte Institute on all of Hall's claims against Schultes including, but not limited to, the respondeat superior, implied agency, ostensible agency and apparent authority claims based upon the acts of Stich.

After Hall and Stich entered into their agreement, the trial court struck Stich from the caption of the case. However, Stich remained in the form of verdict used by the jury for the purpose of apportioning the award of damages based on Ariz.Rev. Stat.Ann. ("A.R.S.") section 12–2506 (1991).

Subsequent to the Hall–Stich agreement, Stich and his insurance carrier entered into an agreement called "Agreement and Release of All Claims." The agreement basically stipulated that in consideration of the carrier agreeing to pay $500,000 to Hall, Stich acknowledged that the carrier had discharged all of its obligations under the policy and Stich released the carrier from all claims related to the Hall lawsuit. It is undisputed that neither Hall nor her attorney had any knowledge of this agreement until after the verdict in the Hall lawsuit.

The jury found in favor of Hall on the independent acts of negligence charged against Schulte as well as finding that Schulte was derivatively responsible for certain acts of Stich. As to the independent acts of negligence by Schulte, the jury also found Hall 30% contributorily negligent. The total amount of damages was $1,100,000, and they were apportioned by the jury in the following way:

1. Independent acts of negligence by the Schultes: 15% or $165,000 (reduced to $115,550 net damages because of Hall's 30% contributory negligence).

2. Negligence of Stich prior to 3/28/86 [1] as apparent agent for and in the scope of the apparent agency of the Schultes for which the Schultes were found by the jury to be derivatively liable: 15% or $165,000.

3. Negligence of Stich prior to 3/28/86 either not as the apparent agent for nor in the scope of the apparent agency of the Schultes: 10% or $110,000.

4. Intentional acts of Stich prior to 3/28/86 as apparent agent for and in the scope of the apparent agency of the Schultes: 0%.

5. Intentional acts of Stich prior to 3/28/86 either not as the apparent agent nor in the scope of the apparent agency of the Schultes: 40% or $440,000.

6. Negligence of Stich after 3/28/86: 5% or $55,000.

7. Intentional acts of Stich after 3/28/86: 15% or $165,000.

In post-trial motions, Schulte sought to offset the verdict by the use of the $500,000 settlement. First, Schulte claimed that the settlement amount should be credited against that portion of the damages awarded which were attributable to Stich's negligence for which Schulte was held vicariously liable. Second, Schulte argued that the settlement amount should act as a credit against all of the damages except those that were caused by Stich's intentional acts. Since 55% of the damages ($605,000) were chargeable to Stich's intentional acts, Schulte reasoned that Hall had been fully paid for all the remaining damages by the settlement and was, therefore, not entitled to collect any additional amounts from Schulte.

The trial court partially agreed with this argument. It ordered that Schulte was liable to Hall only for damages attributable to the independent acts of negligence of Schulte, an amount totalling $115,500. This appeal and cross-appeal followed.

■ We hold that the settlement amount of $500,000 applies to all damages for which Stich was liable whether on the basis of negligence or intentional acts. We find that the trial court also erred in refusing to enter judgment against Schulte based on Schulte's derivative liability. Finally, the plaintiff is entitled to have judgment entered, with interest, on the derivative liability claim because it is clearly a liquidated amount. Our reasons follow.

## ALLOCATION OF THE SETTLEMENT PROCEEDS

■ The Hall–Stich agreement clearly reserved Hall's right to proceed against Schulte on all claims. Just as clearly, the agreement did not release Schulte. In Arizona, a covenant not to sue is not a legal release and, where it reserves the right to sue a person who may be derivatively liable, that person is not released. *Hovatter v. Shell Oil Co.*, 111 Ariz. 325, 326–27, 529 P.2d 224, 225–26 (1974); *Ray Korte Chevrolet v. Simmons*, 117 Ariz. 202, 204–05, 571 P.2d 699, 701–02 (App.1977).

1. Before trial, the court had ruled as a matter of law that the Schultes were not vicariously liable for any acts conducted by Stich after March 28, 1986.

As a result, Hall claims that the $500,000 settlement should be credited first against that portion of the damages for which the jury found Stich solely responsible. This would be $770,000 since 70% of the damages were assessed against Stich individually. Since Stich's individual liability was greater than the settlement amount, according to Hall no portion of the settlement should be applied to reduce either the derivative or the independent liability of Schulte. Schulte does not claim that the agreement should release him from liability. However, he does claim that the manner of allocation satisfies all portions of the award not attributable to Stich's intentional acts.

### A. The insurance policy coverage.

Schulte's first argument is that the insurance policy prohibits the $500,000 from being paid for Stich's intentional acts because the coverage afforded does not provide for liability for intentional misconduct.[2] The further allegation is that public policy does not permit indemnifying a person for his own wilful wrongdoing. The argument goes like this. Since 30%, or $330,000, of the award was for Stich's negligence, whether independent or derivative, and since the settlement of $500,000 cannot be applied to intentional acts, the settlement completely satisfies all damages resulting from Stich's negligence. Furthermore, since the settlement amount exceeds the amount relating to Stich's negligence, it also satisfies a portion of the damages constituting Schulte's liability for independent acts of negligence. *See State v. Superior Ct.*, 140 Ariz. 365, 367, 681 P.2d 1384, 1386 (1984) (satisfaction of a judgment against one tort-feasor for the full amount of damages extinguishes a cause of action against another tort-feasor for the same harm).

Schulte's argument that because the Stich insurance policy does not cover Stich's intentional acts the settlement cannot be applied to the award of the jury involving Stich's intentional acts, has no convincing force. Any issue concerning what was covered ends when the parties to the pending suit compromise the claim and the terms of the settlement are met. So, once the carrier settled its coverage argument with Stich and agreed to pay $500,000 to Hall, all coverage issues became irrelevant. *See Aritex Land Co. v. Baker*, 14 Ariz.App. 266, 274, 482 P.2d 875, 883 (1971). Further, the agreement settled all of Hall's claims against Stich, whether negligent or intentional misconduct. Finally, the public policy argument makes little sense. The basis behind the public policy argument is that an insured should not be encouraged to commit intentional wrongful acts by being indemnified by an insurance company for those acts. *See Transamerica Ins. Group v. Meere*, 143 Ariz. 351, 355–56, 694 P.2d 181, 185–86 (1984). From the record, it is obvious that the carrier settled the coverage question with its insured, Stich, before the verdict in the Hall–Schulte lawsuit. The settlement not only satisfied any obligation which the carrier owed to Stich, but it also satisfied all claims which Stich might have against his carrier for liability arising out of the Hall–Schulte lawsuit. Permitting payment to be credited against Stich's entire liability, rather than just for liability arising from his negligent acts, does not mean that the carrier was providing Stich with coverage for his intentional misconduct.

### B. Intent of the parties.

Schulte claims that the intent of the parties was that the $500,000 was to be credited to the negligent acts of Stich.

Hall's position is that the agreement expresses the intent of the parties, and that intent was that the settlement amount be set off against the entire liability of Stich,

---

**2.** The coverage portion of Stich's insurance policy states that it provides coverage for any "negligent act, error or omission" or any damages assessed against Stich because of injury caused by an "occurrence." "Occurrence" is defined as "an accident ... which results in bodily injury or property damage, neither expected nor intended from the standpoint of the Insured...." The exclusions section of the policy excludes coverage for any "dishonest, criminal, fraudulent or malicious act or omission."

whether for negligence or intentional misconduct.

The apparent basis of the Schulte argument is the policy of insurance of Stich. The reasoning is that since Hall, the insurance carrier, and Stich all knew that intentional misconduct was not covered by the insurance policy, the intent of the settlement had to be that the proceeds of the settlement covered only the negligent claims rather than both negligent and intentional claims. Schulte also claims that it makes no sense, from Stich's perspective, to interpret the agreement as Stich's assent to exhaust his insurance coverage in order to free himself from liability to Hall and then expose himself to personal liability for an indemnity claim from Schulte. Therefore, it was obviously Stich's intention to have any derivative liability found on the part of Schulte reduced by the amount of the settlement payment. To support this approach, Stich submitted an affidavit which provided that when he entered into the agreement he believed that the full amount of the settlement would be credited against any judgment rendered against Schulte for Schulte's derivative liability for Stich's acts.

 When construing covenants not to sue, or any other contract, it is clear that if there are no ambiguities, interpretation is a question of law, and that merely because the parties disagree as to the meaning of an agreement, such disagreement does not create ambiguity. *See United Cal. Bank v. Prudential Ins. Co.*, 140 Ariz. 238, 257–58, 681 P.2d 390, 409–10 (App.1983). The interpretation which is placed on the agreement should be one that gives reasonable, lawful and effective meaning to all the terms. *See* Restatement (Second) of Contracts § 203(a) (1981).

Although the agreement does not specifically discuss how the funds were to be allocated, it does clearly indicate that the intent of the parties to the agreement was that the parties intended to settle *all* of Hall's claims against Stich. Given the purpose of settling all claims, the most reasonable interpretation of the agreement would be that the parties intended that the settlement be applied to Stich's entire liability as might be established by the verdict. It certainly is more reasonable than to interpret the settlement to mean that the parties intended to apply the proceeds to only part of the award.

It is irrelevant, it seems to us, that allocation of the settlement to Stich's entire liability would result in Stich being exposed to a claim of indemnity from Schulte. *Hovatter v. Shell Oil Co.*, 111 Ariz. 325, 529 P.2d 224 (1974), dealt with a similar situation. Hovatter sued C. Dan Simkins, a service station operator, and Shell. Both defendants then moved for summary judgment. Shell's motion was granted and Simkins' motion was denied. Hovatter appealed the granting of Shell's motion for summary judgment. During the pendency of the appeal, Simkins entered into an agreement with Hovatter entitled "Covenant Not to Sue, Resue, Reinstate or Execute," and the case against Simkins was dismissed without prejudice. The agreement between Hovatter and Simkins expressly reserved Hovatter's right to proceed with the action against Shell. In a distributorship agreement entered into by Simkins and Shell before the initiation of Hovatter's lawsuit, Simkins agreed to indemnify Shell if Shell was found liable in an action such as the one brought by Hovatter. After Shell attempted to argue on appeal that it was released by the covenant between Hovatter and Shell, the supreme court held that the covenant not to sue did not relieve Shell from liability. *Id.* at 327, 529 P.2d at 226. Regarding Simkins' agreement to indemnify Shell, the court said:

> This is an agreement between [Simkins] and Shell and not at issue here. Simkins must have known of this contractual provision but he assumed the risk that he might be called upon to reimburse Shell for reasons of his own, independent of the action here.

*Id.*

Our case differs from *Hovatter* in that any indemnity right that the Schultes would have against Stich would be at law and not contractual. However, Stich must have been aware that the Schultes could

assert this right against him. Therefore, because the Hall–Stich agreement on its face evidences the parties' intent that Hall be permitted to prosecute all of her vicarious liability claims against Schulte, the fact that Stich failed to protect himself against an indemnity claim from Schulte is irrelevant and should not affect the interpretation of the contract.

Since the carrier's insured was Stich, not Schulte, it certainly would not have been the carrier's intent that its settlement be used to satisfy Schulte's liability rather than Stich's.

Since the agreement between Hall and Stich clearly and unambiguously provided that the $500,000 was to settle all claims of Hall against Stich and would not affect Hall's rights against Schulte, the payment should be set off first against all of Hall's damages for which Stich alone was liable, whether they be negligent or intentional.

■ Although both Hall and Schulte discuss the impact of A.R.S. section 12–2504 (1991), which is part of Arizona's version of the Uniform Contribution Among Tortfeasors Act, and are in disagreement concerning the statute's application, it makes no difference. We observe that even before the statute, the common law was that a settlement by one of several tort-feasors entitled the non-settling defendant to have the settlement reduce the plaintiff's damages even if the jury later exonerated the settling defendant. *See American Home Assurance Co. v. Vaughn*, 21 Ariz.App. 190, 192, 517 P.2d 1083, 1085 (1974); *Riexinger v. Ashton Co.*, 9 Ariz.App. 406, 407–08, 453 P.2d 235, 236–37 (1969). The reason is rather obvious. A plaintiff is entitled to be made whole in damages, and that is all. Nor should a plaintiff be allowed to be compensated for damages which exceed the injuries suffered. *Brown v. Valley Nat'l Bank of Ariz.*, 26 Ariz.App. 538, 540, 549 P.2d 1056, 1058 (1976).

If we accepted the Schulte argument, Hall would not be made whole because it would prevent her from collecting the derivative liability award and the individual liability award from Schulte, while the Hall–Stich agreement would prevent Hall

from collecting any more from Stich. Consequently, no portion of the $500,000 settlement should be applied to reduce Schulte's liability. The trial court erred in refusing to enter judgment against Schulte with respect to the derivative liability award.

## PREJUDGMENT INTEREST

■ Hall takes the position that we should remand this case to the trial court in order that the judgment of $165,000 be assessed against Schulte for the full derivative liability award of the jury together with interest at the legal rate from the date of the jury verdict, pursuant to A.R.S. section 12–347 (1982). We agree. A.R.S. section 12–347 provides that a judgment entered by the court shall include costs and interest on the verdict from the time it was rendered. When a claim is liquidated, an award of prejudgment interest is mandatory even though there may be a good faith dispute over liability. *Prendergast v. City of Tempe*, 143 Ariz. 14, 23, 691 P.2d 726, 735 (App.1984). However, prejudgment interest is not permitted on an unliquidated claim. *Cockrill v. Cockrill*, 139 Ariz. 72, 75, 676 P.2d 1130, 1133 (App.1983).

Schulte claims that because Hall's claim is one for negligence and intentional misconduct involving allegations of pain, suffering and psychological injury, and because the amount that might be entered against Schulte was not definite even after the verdict was rendered, it is an unliquidated claim. However, the jury in this case liquidated the claim against Schulte when it rendered its verdict as to the amount of damages incurred by Hall and apportioned the appropriate percentage to Schulte. In determining whether a claim is liquidated, the court must inquire whether "the claim [is] one which 'makes it possible to compute the amount with exactness without reliance upon opinion or discretion.'" *In re Estate of Estes*, 134 Ariz. 70, 81, 654 P.2d 4, 15 (App.1982) (quoting *Costanzo v. Stewart Title & Trust of Phoenix*, 23 Ariz.App. 313, 317, 533 P.2d 73, 77 (1975)). In this case, one needs only to multiply the total amount of Hall's damages assessed by the jury, $1,100,000, by the percentage for which

Schulte was found derivatively liable, 15%, in order to compute the amount of Hall's derivative liability claim against Schulte. Therefore, the derivative liability claim is liquidated and Hall is entitled to prejudgment interest from the date the verdict was rendered.

The trial court's judgment against Schulte awarding Hall damages based on Schulte's liability for independent acts of negligence is affirmed. We reverse with respect to the trial court's failure to enter judgment against Schulte on the derivative liability claim. We remand with directions to enter judgment in favor of Hall against Schulte in the amount of $165,000, with interest at the legal rate from the date the verdict was rendered.

GRANT and SHELLEY, JJ., concur.