NOTICE: NOT FOR PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION DOES NOT CREATE
LEGAL PRECEDENT AND MAY NOT BE CITED EXCEPT AS AUTHORIZED.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

GLENNA COVINO, *Plaintiff/Appellant*,

*v.*

TERRY FORREST and DEBORAH A. FORREST, husband and wife;
JEFFREY COVINO and JUDY COVINO, husband and wife,
*Defendants/Appellees*.

No. 1 CA-CV 13-0433
FILED 07-03-2014

Appeal from the Superior Court in Maricopa County
No. CV2010-070608
The Honorable Eileen S. Willett, Judge

**AFFIRMED**

COUNSEL

Morris Law Firm PLLC, Surprise
By Richard W. Morris
*Counsel for Plaintiff/Appellant*

Charles M. Giles Attorney at Law, Tucson
By Charles M. Giles
*Counsel for Defendants/Appellees*

---

**MEMORANDUM DECISION**

Presiding Judge Kenton D. Jones delivered the decision of the Court, in which Judge Margaret H. Downie and Judge Donn Kessler joined.

---

**J O N E S**, Judge:

**¶1**  Glenna Covino, in both her individual and trustee capacity (collectively, Glenna), brought an action against her step-children, Jeffrey Covino and Deborah Forrest, and their spouses (collectively, Defendants), for, *inter alia*, conversion and unjust enrichment. The conversion claim was tried to a jury, which found for Glenna and awarded $15,000 in damages. The unjust enrichment claim was submitted to the trial court, which found against Glenna. Following the jury's verdict, she filed a comprehensive motion attacking the damages award, which the trial court denied in full.

**¶2**  Glenna appealed, asserting: 1) the trial court abused its discretion in denying her motion for partial summary judgment on the conversion claim; 2) the trial court erred in denying her numerous post-verdict motions attacking the sufficiency of the conversion damages; and 3) the trial court erred by finding in favor of Defendants on her unjust enrichment claim. Finding no error, we affirm.

**FACTS AND PROCEDURAL HISTORY**

**¶3**  Charles Covino, Jeffrey and Deborah's father, decided to move to Arizona, where Jeffrey and Deborah lived, in or around 2003, following the death of his first wife. To this effect, he sold two real estate properties located in New York and New Jersey, and used the proceeds to purchase a house in Arizona (Arizona house); he also purchased 300 Krugerrands.[1]

**¶4**  In May 2006, Charles married Glenna. Shortly thereafter, the couple began establishing their estate plan. On January 18, 2007, they

---

[1] Krugerrands are South African one ounce gold bullion coins. USA Gold, http://www.usagold.com/gold/coins/krugerrand.html (last visited May 21, 2014).

executed the Covino Family Living Trust (Covino Trust). The Covino Trust provided that in the event Charles predeceased Glenna, Glenna would become the Trustee of her trust assets in a revocable living trust known as "Trust A." Also, Glenna was to then serve as Trustee of Charles's trust assets under the newly formed "Trust B," created within the Covino Trust. The Covino Trust further provided:

> From this TRUST B the Trustee shall allow GLENNA L. COVINO the use and enjoyment of [the Arizona house] during her lifetime. Also, the Trustee shall allow GLENNA L. COVINO to drawn [sic] on the income and/or principal of the remaining corpus of TRUST B for her health, maintenance and support needs as the Trustee deems appropriate. If GLENNA L. COVINO determines that her continued use and enjoyment of the home is unreasonable, then she can direct the Trustee to sell the home and thereafter the Trustee shall pay to GLENNA L. COVINO, from the sale proceeds of the home, a monthly allowance of three thousand dollars . . . until her death.

> Upon the death of GLENNA L. COVINO, the Trustee shall divide the remainder of Trust B assets equally among JOHN A. COVINO, DEBOARH A. FORREST AND JEFFERY [sic] C. COVINO.

¶5            That same day, the couple executed several other ancillary documents to effectuate the purpose of the Covino Trust. The first document was a "Community Property Agreement," in which they converted any property they had acquired as joint tenants into community property. They also executed an "Assignment of Personal Property," which assigned to the Covino Trust "[a]ll of our present and future interest in and to all of our personal property and household goods, furnishings located in any home we might own or have an interest in now or hereafter." Charles also executed a will. The will provided that Glenna was to receive "any interest [Charles] may have in all personal automobiles, clothing, jewelry, china, silver, books, pictures and other works of art, household furniture and furnishings and all other items of domestic, household or personal use." If Glenna did not survive Charles, these items were directed to be placed in the Covino Trust. Charles's will also contained a residuary clause, whereby Charles devised the rest of his separate and community property to the Covino Trust.

¶6          Charles died on August 15, 2010, predeceasing Glenna. Five days later, Jeffrey and Deborah went to the Arizona property and removed numerous items, including four safes (which held the Krugerrands and various other coins), guns, and other sentimental items they contended Charles had gifted them during his lifetime.[2]  After Glenna told them the items belonged to the Covino Trust and requested, to no avail, the items be returned, Glenna filed this action on November 5, 2010, against the Defendants, alleging claims of: 1) conversion, 2) trespass, 3) unjust enrichment, 4) infliction of emotional distress, and 5) breach of duty to a vulnerable adult. The Defendants answered and filed counter claims for breach of duty to a vulnerable adult and reformation of the trust.

¶7          Following discovery, Glenna moved for partial summary judgment on her conversion and unjust enrichment claims, arguing the removed items became part of the Covino Trust upon Charles's signing of his "Assignment of Personal Property," or alternatively upon Charles's death by way of his the residuary clause of his will.  In response, Defendants asserted summary judgment was inappropriate as questions of material fact existed concerning whether they had been gifted the items by Charles, which would have removed the items from the purview of either document Glenna relied upon. The Defendants also cross-moved for summary judgment, arguing Glenna had not provided competent evidence the safes and guns had not been gifted to them. The trial court denied both motions without comment.

¶8          A three day jury trial commenced in late February 2013. Glenna testified twenty-four different items were taken from her residence

[2] At trial, Glenna admitted into evidence a list of items she believed the Defendants removed.  The full list includes: 210 Krugerrand gold coins, other miscellaneous gold coins, 100 ounce silver ingot, a bronze cannon, 109 grams of 18 carat gold, Carl Zeiss Binoculars, an Orbis Batton Kill [sic] fly rod, 2 Waltham pocket watches, miscellaneous Civil War relics and replicas, a car phone, 350 Morgan Brilliant Uncirculated Silver Dollars, 110 "silver dimes," 125 "silver quarters," an ASM 44 cal. black powder firearm, a Ruger 223 firearm, a Weatherby 30/06 firearm, a Winchester 12 gauge shotgun, 2 field binoculars, a 4.21 bore cannon, an 80 cal. Cannon, 5 swords and their rack, 5 battle axes, "1557 Kennedy Half Dollars 1964," and 350 Liberty Half Dollars. The Defendants admitted removing all of the items on the list, except for the 100 ounce silver ingot, the 350 Morgan Silver Dollars, and the Kennedy and Liberty Half Dollars.

and that it was her understanding they belonged to the Covino Trust. She admitted several items had been returned to her,[3] but estimated the value of the outstanding items taken approached $432,000, with the 210 Krugerrands, alone, estimated to be worth approximately $349,000. She retrieved her estimated values from the internet.

**¶9** Each defendant also testified. The gist of their collective testimony was that the guns, safes and the safes' contents, including the 210 Krugerrands they contended were purchased as an investment for them, were purchased by Charles before he married Glenna and gifted by Charles to Jeffrey and Deborah many years before his death. At the close of testimony, Glenna moved for a directed verdict on her conversion claim, which was denied.

**¶10** Subsequently, only Glenna's conversion claim was submitted to the jury, as the parties agreed to submit the unjust enrichment and reformation of trust claims to the court; the balance of the claims were dismissed with prejudice at some point during the proceedings. The jury received two general verdict forms: one to be used in the event the jurors found in favor of Glenna, the other if the jurors found in favor of Defendants. The form to be used if they found in favor of Glenna allowed the jury to determine which of the four defendants, if not all, were liable and allowed the jury a line upon which to insert an amount reflecting "the full damages."[4] Ultimately, the jury found Jeffrey

---

[3] Prior to trial, upon Glenna's motion, the trial court ordered the disputed items be stored at T & T Estate Service for safekeeping during the proceedings. It was T & T Estate Service that returned the items to Glenna, rather than the Defendants.

[4] The general verdict form at issue here reads:

(Use if you find for the Plaintiff on Conversion Claim)

We, the Jury, duly empanelled and sworn in the above-entitled action, upon our oaths, do find in favor of Plaintiff on her claim of conversion and find the full damages to be $_____.

We find one or more of the Defendants caused and liable for these damages (check only one box for each Defendant)

and Deborah liable for conversion and awarded Glenna $15,000 in damages.

¶11        Thereafter, the parties submitted briefs to the trial court on Glenna's unjust enrichment claim.  After taking into account the trial testimony, the admitted exhibits, and the jury's verdict, the trial court found Glenna had an appropriate remedy at law (her conversion claim) for the relief she sought in her unjust enrichment claim, and determined Glenna failed to meet her burden of proof.  Also, it dismissed Defendants' reformation of trust claim with prejudice because neither side pursued the claim in the presented briefs.

¶12        Glenna then filed a "Motion for Judgment as a Matter of Law, or Alternatively for a New Trial, or Alternatively for Additur, or Alternatively for Correction of the Verdict's Damages Amount; Motion for Stay Pending Final Decision on All Post Trial Motions and Appeals."   The crux of Glenna's motion was her belief that the jury's verdict in her favor meant it found Jeffrey and Deborah had converted all of the items Glenna asserted had been converted, and that since the parties had allegedly stipulated to those items' values, and the damages award ($15,000.00) was inconsistent with the allegedly stipulated values and the evidence admitted at trial, the verdict was in error.  In an unsigned minute entry, the trial court denied the motion, finding that damages were disputed, that the jury resolved the dispute, and the award was justified by the evidence presented at trial.  Thereafter, Glenna filed a notice of appeal. We suspended the appeal to allow Glenna to obtain a signed order from the trial court, which she did.  We have jurisdiction pursuant to Arizona Revised Statutes (A.R.S.) section 12-2101(A)(1), (5)(a).

---

|  |  |  |
|---|---|---|
| Terry Forrest | _____ Liable | _____ Not Liable |
| Deborah A. Forrest | _____ Liable | _____ Not Liable |
| Jeffrey Covino | _____ Liable | _____ Not Liable |
| Judy Covino | _____ Liable | _____ Not Liable |

The jury placed $15,000 in the damages blank, and found Jeffrey and Deborah liable, while finding Judy and Terry not liable.

**DISCUSSION**

¶13        Glenna essentially raises four issues on appeal.  First, she argues the trial court abused its discretion by denying her partial motion for summary judgment on her conversion claim.  Second, she argues the trial court erred by denying her motion for judgment as a matter of law. Third, she contends the trial court erred by denying her other post-verdict motions regarding the amount of damages awarded on her conversion claim.  Finally, she asserts the trial court erred by finding in favor of the Defendants on her unjust enrichment claim.

I.        **Denial of Summary Judgment**

¶14        "Generally, the denial of a summary judgment motion is not reviewable on appeal from a final judgment entered after a trial on the merits." *John C. Lincoln Hosp. & Health Corp. v. Maricopa Cnty.*, 208 Ariz. 532, 539, ¶ 19, 96 P.3d 530, 537 (App. 2008); *see Sorenson v. Farmers Ins. Co. of Ariz.*, 191 Ariz. 464, 465, 957 P.2d 1007, 1008 (App. 1997) ("A denial of a motion for summary judgment is an intermediate order deciding simply that the case should go to trial.").  In a case that has gone to trial, a party that wishes to preserve the summary judgment issue, "with a possible exception for a purely legal issue," must reassert the issue in an Arizona Rule of Civil Procedure 50 motion for judgment as a matter of law (JMOL) or other post-trial motion. *John C. Lincoln*, 208 Ariz. at 539, ¶ 19, 96 P.3d at 537.  Failure to do so results in a waiver of the party's right to appeal the denial.  *Id.*  In this instance, the trial court denied Glenna's partial summary judgment motion without further comment.  Nonetheless, Glenna did make an unsuccessful Rule 50(a) motion at the conclusion of the trial's evidentiary phase and has preserved the issue for appeal.

¶15        While Glenna asserts the standard of review of the denial of a motion for summary judgment to be abuse of discretion, *Sonoran Desert Investigators, Inc. v. Miller*, 213 Ariz. 274, ¶ 5, 276, ¶ 5, 141 P.3d 754, 756 (App.  2006), and alternative case authority holds that same denial requires us to review the matter *de novo*, *Bernal v. Loeks*, 196 Ariz. 363, 364, ¶ 6, 997 P.2d 1192, 1993 (App. 2000) (grant or denial of summary judgment reviewed de novo), we need not address the distinction as we find the trial court did not err under either standard.   Pursuant to the specific language Arizona Rule of Civil Procedure 56, summary judgment is warranted if no genuine issues of material fact exist and the moving party demonstrates it is entitled to judgment as a matter of law.  Ariz. R. Civ. P. 56(a); *Nat'l Bank of Ariz. v. Thruston*, 218 Ariz. 112, 115, ¶ 14, 180 P.3d 977, 980 (App. 2008).   The trial court should grant summary

judgment if "the facts produced in support of the claim or defense have so little probative value, given the quantum of evidence required, that reasonable people could not agree with the conclusion advanced by the proponent of the claim or defense." *Orme Sch. v.* Reeves, 166 Ariz. 301, 309, 802 P.2d 1000, 1008 (1990).

¶16        Although Glenna moved for summary judgment on both the conversion and unjust enrichment claims, on appeal she only contends the trial court erred by denying her summary judgment motion on her conversion claim. The tort of conversion is defined as "an act of wrongful dominion or control over personal property in denial of or inconsistent with the rights of another." *Case Corp v. Gehrke*, 208 Ariz. 140, 143, ¶ 11, 91 P.3d 362, 365 (App. 2004) (quoting *Sears Consumer Fin. Corp. v. Thunderbird Prods.*, 166 Ariz. 333, 335, 802 P.2d 1032, 1034 (App. 1990)); *Autoville, Inc. v. Friedman*, 20 Ariz. App. 89, 91, 501 P.2d 400, 402 (1973) (noting the gravamen of conversion is the wrongful interference with another's ownership or right of possession). To bring a conversion claim, a plaintiff must have had "the right to immediate possession" of the personal property "at the time of the alleged conversion." *Universal Mktg. & Entm't Inc. v. Bank One of Ariz., N.A.*, 203 Ariz. 266, 268, ¶ 6, 53 P.3d 191, 193 (App. 2002).

¶17        A review of the parties' motions reveals the existence of genuine issues of material fact, and that the trial court did not err by denying Glenna's motion for partial summary judgment. Glenna alleged the Covino Trust owned the items in dispute at the time Jeffrey and Deborah removed them from the property as a result of Charles's assignment of personal property to the trust in 2007. Alternatively, Glenna argued the disputed personal property "poured over" into the Covino Trust at Charles's death by virtue of the specific provisions of his will.

¶18        In response, the Defendants provided signed declarations from Jeffrey, Deborah, and Deborah's husband, Terry, alleging that the guns, safes, and the safe's contents, including the coins, were given to them well before the Covino Trust was created, and prior even to Charles's marriage to Glenna, and were, therefore, not a part of Charles's estate. The Defendants also argued the language of the Covino Trust documents and Charles's will bolstered their position, as none of those documents specifically listed, within their inventories, the guns, safes or coins; that is to say, Charles did not purport to include those items within the *res* of the trust as their disposition had already been addressed through gifting them to his children. Moreover, the Defendants attached

an estate valuation form completed by both Glenna and Charles in December 2008, nearly two years following the formation of the Covino Trust, which listed the value of all household items at $100,000; a sum clearly inconsistent with the value Glenna attached to what she asserted to be the converted property.

**¶19** Viewing the evidence and drawing all reasonable inferences in the light most favorable to Defendants as the non-moving party, a genuine issue of material fact sufficient to defeat a motion for summary judgment existed as to whether Charles had made a valid *inter vivos* gift of the items to Jeffrey and Deborah. This, in turn, created a question of fact as to who the owner(s) of the items at issue was/were at the time Defendants removed them. Ownership, of course, is central to the issue of conversion. *See Case Corp.*, 208 Ariz. at 143, ¶ 11, 91 P.3d at 365. When questions of material fact exist, summary judgment is inappropriate. *Orme Sch.*, 166 Ariz. at 306, 802 P.2d at 1005. Accordingly, the trial court did not abuse its discretion in denying Glenna's motion for partial summary judgment on her conversion claim.

## II. Motion for Judgment as a Matter of Law

**¶20** Following the jury's verdict, Glenna filed a motion for JMOL, pursuant to Arizona Rule of Civil Procedure 50(b). The trial court denied that motion, and Glenna now argues it erred in doing so.

**¶21** We review the denial of a motion for a JMOL de novo. *Goodman v. Physical Res. Eng'g, Inc.*, 229 Ariz. 25, 27, ¶ 6, 270 P.3d 852, 854 (App. 2011). We will uphold the court's denial unless "the facts produced in support of the claim or defense have so little probative value, given the quantum of evidence required, that reasonable people could not agree with the conclusion advanced by the proponent of the claim or defense." *Id.* at 28, ¶ 6, 270 P.3d at 855 (quoting *A Tumbling-T Ranches v. Flood Control Dist. of Maricopa Cnty.*, 222 Ariz. 515, 524, ¶ 14, 217 P.3d 1220, 1229 (App. 2009)). In our review, we view the evidence in the light most favorable to upholding the jury's verdict, and will affirm "if any substantial evidence exists permitting reasonable persons to reach such a result." *A Tumbling-T Ranches*, 222 Ariz. at 524, ¶ 14, 217 P.3d at 1229.

**¶22** Glenna moved for JMOL only upon the issue of the damages award, arguing the jury's verdict in her favor on the conversion claim demonstrated, as addressed above, that the jury rejected Defendants' gift theory as to all of the items, and, therefore, the jury was required to return

a damages award consistent with the allegedly stipulated values of all of the items. We disagree.

### A. Evidence of Gift

**¶23** First, we note Defendants' gift defense does not fail as a matter of law as there was sufficient evidence provided at trial to allow a reasonable jury to find gifts had been made to Defendants. A valid *inter vivos* gift requires donative intent, delivery, and vesting of irrevocable title in donee. *Armer v. Armer*, 105 Ariz. 284, 289, 463 P.2d 818, 823 (1970). The purported donee must prove the gift with clear and convincing evidence. *O'Hair v. O'Hair*, 109 Ariz. 236, 240, 508 P.2d 66, 70 (1973). However, a lesser burden of proof is required for a gift between a parent and child. *Armer*, 105 Ariz. at 289, 463 P.2d at 823; *Stewart v. Damron*, 63 Ariz. 158, 167, 160 P.2d 321, 325 (1945). The jury was properly instructed on each of these points.

**¶24** Here, Jeffrey, Deborah, and Terry all testified that Charles specifically told them the safes and the contents of the safes, which included the Krugerrands and various guns, were his children's. Deborah and Terry testified that Charles re-affirmed the items belonged to his children on several occasions in Glenna's presence. Although Glenna testified Charles never told her he had given the gold coins to anybody, such a conflict in evidence is to be resolved by the jury. *Lashonda M. v. Ariz. Dep't of Econ. Sec.*, 210 Ariz. 77, 82, ¶ 16, 107 P.3d 923, 928 (App. 2005).

**¶25** Contrary to Glenna's contention, evidence was also presented to support the inference that the safes and their contents were delivered to the Defendants. What constitutes a sufficient delivery for purposes of a valid gift "will depend very largely upon the nature of the subject-matter of the gift, and the situation and circumstances of the parties." *Ariz. Title Guarantee & Trust Co. v. Wagner*, 75 Ariz. 82, 88, 251 P.2d 897, 901 (1952). Delivery may be made through actual delivery of the subject matter of the gift, or through constructive delivery. *Id.* at 89, 251 P.2d at 902. "The traditional understanding is that a delivery is constructive if the donor gives the donee the means of obtaining possession or control of the subject of the gift, for example by giving the donee the key to the place where the property is located." Restatement (Third) of Property (Wills & Don. Trans.) § 6.2 cmt. g (2003).

**¶26** Deborah testified Charles had given Jeffrey and her the safe combinations and told her they were the only persons with that

knowledge.  In conformity with this statement, she also testified Charles had not given the combinations to Glenna.  Glenna testified that she did not know the combinations off-hand, and in an earlier interrogatory stated she had known them at one point, but could no longer remember them.  With this testimony, the jury could have reasonably determined the safes, and the items contained within, were delivered to the Defendants through Charles's delivery of the combinations.  As to the third element required for a valid gift, no evidence was provided that would contradict the assertion Charles had vested irrevocable title of the items in his children or that he acted inconsistent with having provided the items as a gift to his children.  With that, we turn to Glenna's argument that the jury finding in her favor necessarily meant it found the Defendants converted every item taken from the property.

B.      "All or Nothing" Defense

¶27        Glenna argues the jury's general verdict in her favor precluded the possibility the jury could have found some of the items were gifted to Defendants while others were not.  Given this, she argues she was entitled to a damages award equal to the sum of the values (which she contends were stipulated) of all of the items.  Essentially, she argues that because the jury found the Defendants liable for conversion generally, the jury must have necessarily found the Defendants converted each and every item they took from the Arizona house.

¶28        First, the record does not support Glenna's contention the exact values of the items had been stipulated to by the parties.  The general rule is parties are bound by their stipulations unless relieved from them by the court.  *Harsh Bldg. Co. v. Bialac*, 22 Ariz. App. 591, 593, 529 P.2d 1185, 1187 (1975).  "A stipulation is an agreement, admission or concession made in a judicial proceeding by the parties thereto or their attorneys, in respect to some matter incident thereto, for the purpose, ordinarily, of avoiding delay, trouble and expense."  *Id.* (quoting *Bekins Van & Storage Co. v. Indus. Comm'n of Ariz.*, 4 Ariz. App. 569, 570, 422 P.2d 400, 401 (1967)) (internal quotation marks omitted).

¶29        The joint pre-trial statement, within a section entitled "Stipulations of material fact and law," contained a table listing "[t]he descriptions and estimated values of the personal property items that are an issue in this litigation." As Defendants note, the values contained within the pre-trial statement were merely estimates.  Although the jury was instructed to consider any stipulated facts as proven, the record on

appeal is devoid of any indication the jury was actually provided the allegedly stipulated values from the pre-trial statement.[5]

¶30 Regardless, the Defendants did not dispute Glenna's stated values, or the previously referenced exhibit, which placed the collective value of the contested items in excess of $430,000. From this, based upon her argument that the jury's general verdict necessarily meant the jury rejected the Defendants' gift theory as to each item, Glenna argues she is entitled to a damages award consistent with the aggregate value of the items taken.

¶31 In support of her argument, Glenna cites *Kaman Aerospace v. Ariz. Bd. of Regents*, 217 Ariz. 148, 156, ¶ 32, 171 P.3d 599, 607 (App. 2007), which states "[a] general verdict implies a finding by the jury on every essential fact in favor of the prevailing party." *Id.* (quoting *Lohmeier v. Hammer*, 214 Ariz. 57, ¶ 14, 148 P.3d 101, 106 (App. 2006)). Without further developing this argument, Glenna contends this proposition means the jury found that Jeffrey and Deborah *converted* every single item they removed from the property. We disagree.

¶32 Generally, in the absence of special interrogatories, we will uphold a jury's verdict if supported by any theory presented at trial. *See State ex rel. Corbin v. United Energy Corp. of Am.*, 151 Ariz. 45, 52, 725 P.2d 752, 759 (App. 1986); *Reese v. Cradit*, 12 Ariz. App. 233, 238, 469 P.2d 467, 472 (1970). General verdicts have been reversed when the jury was presented with multiple theories — some invalid and some valid — upon which it could base its award and the reviewing court was unable to discern whether the jury's general verdict was rendered upon a properly or improperly submitted theory. *See Bruce Church, Inc. v. United Farm Workers of Am., AFL-CIO*, 169 Ariz. 22, 34, 816 P.2d 919, 931 (App. 1991); *S. Cas. Co. v. Hughes*, 33 Ariz. 206, 218-19, 263 P. 584, 588-589 (1928).

---

[5] Rather, the record illustrates that no stipulation was made. Glenna testified at trial as to her belief of the items' values. She also submitted into evidence, without objection, another table listing the contested items that contained values differing from the values stated in the pre-trial statement. Also, her counsel, during closing arguments, told the jury, "You'll have to decide . . . what is the value of the things that [the Defendants] took, that they converted . . . . You will have to make the determination yourself as to what the value is. And in that regard, you can take into account [Glenna's] opinion." Moreover, the trial court stated that the "damages were in fact disputed."

Likewise, general verdicts have been disturbed when they were potentially based upon impermissible, speculative evidence. *See Lewin v. Miller Wagner & Co.*, 151 Ariz. 29, 34-35, 725 P.2d 736, 741-42 (App. 1986). Neither of these situations exist in the case at bar.

**¶33** Here, although twenty four items were removed from the Arizona house, Glenna submitted only the all-encompassing, general verdict form addressing conversion to the jury. *See infra* ¶ 9 n.3. During trial, Defendants presented a single theory in their defense of the conversion claim: some of the items they had taken were already theirs by virtue of having been gifted to them by their father. Both the conversion theory and gift defense were valid grounds upon which the jury could find liability, *in toto* or in part. At the close of trial, the jury was properly instructed as to its role as the fact-finder, the tort of conversion, and the applicable law regarding *inter vivos* gifts. Further, no objections were interposed by either party regarding the verdict form or the jury instructions.

**¶34** Glenna argues the Defendants presented their gift defense as an "all or nothing" proposition, and at times the Defendants asserted as much. However, a majority of the Defendants' testimony related only to the guns, safes, and coins being the subject of the gifting, with no explicit mention of the other items taken. As is a part of the standard instructions, the jury was instructed it could "accept everything a witness says, or part of it, or none of it." It was well within the purview of the jury to determine Charles gifted the guns, safes, and coins to his children, but find the remainder of the items — such as swords, battle axes, binoculars and cannons — were not, and award damages accordingly. The ownership of all of the items was contested throughout the trial, and it fell to the jury to resolve the conflict, which it did. To find otherwise would be to detract from the jury's function. *See Standard Chartered PLC v. Price Waterhouse*, 190 Ariz. 6, 39, 945 P.2d 317, 350 (App. 1996) (recognizing a reviewing court's obligation to search for a reasonable way to view the jury's verdict "as expressing a coherent view of the case").

**¶35** In arguing the Defendants are unable to claim the jury could have found they converted some, but not all, of the items, Glenna relies upon *Kansas City Power & Light Co. v. Bigg & Assocs., Inc.*, 197 S.W.3d 147 (Mo. App. 2006). Her reliance, however, is misplaced and somewhat in derogation of her own argument.

**¶36** In *Kansas City Power*, Kansas City Power & Light (KCPL) sued numerous defendants, including Rockwell, after a natural gas

13

explosion destroyed a boiler at its power plant. *Id.* at 150. Specifically as to Rockwell, KCPL alleged defects in design and manufacturing of the programmable logic controller utilized in conjunction with the burner management system that failed to adequately prevent the explosion; KCPL also alleged design defects in the Troubleshooting Guide that Rockwell published for use with the programmable logic controller. *Id.* In response, Rockwell denied liability and asserted thirty affirmative defenses, including that KCPL's damages were restricted by a "limitation of liability" provision contained within the documents given to KCPL when it purchased the programmable logic controller. *Id.*

¶37        The case was submitted to the jury with multiple verdict directing instructions concerning the Troubleshooting Guide and the programmable logic controller. *Id.* at 151. Along with the instructions, a general verdict form was provided to the jury, which directed it to apportion the percentage of fault between KCPL and Rockwell, and provide a total amount of damages. *Id.* at 152. Rockwell offered two alternative verdict forms which the trial court rejected. *Id.* Rockwell did not otherwise object to the general verdict form, or ask for an alternative verdict form requesting the jury be specific as to which claim or claims it assessed fault against Rockwell. *Id.* The jury rendered a verdict in favor of KCPL, apportioning it 70% fault, and to Rockwell 30%, and awarded damages of $452,000,000. *Id.* Rockwell objected to the entry of judgment prior to resolution of its affirmative defense that KCPL's damages were contractually limited, as it had to be determined as a matter of law by the trial court; this affirmative defense only applying to KCPL's design and manufacturing defect claims regarding the programmable logic controller, and not to the claims based upon the Troubleshooting Guide. *Id.* at 152, 154. The trial court, thereafter, accepted Rockwell's affirmative defense and limited KCPL's damages award to $190,867. *Id.* at 152.

¶38        On appeal, KCPL argued the trial court, in reaching its decision to apply the affirmative defense, must have determined the jury's award was premised upon the programmable logic controller claims and excluded the Troubleshooting Guide claims altogether, and that this presumption was unfounded by the general verdict. *Id.* at 154. The Missouri Court of Appeals agreed, concluding:

> Application of the contractual provision to limit Rockwell's liability was Rockwell's affirmative defense. Rockwell bore the burden of prosecuting the defense. Specifically, Rockwell bore the burden of ensuring that the basis of the jury's verdict was known so that the contractual provision

could be applied to the appropriate claims. Yet, Rockwell failed to object to the general verdict form either before it was submitted to the jury or after it was returned by the jury. "[A]n objection to a verdict form must be raised either at the instruction conference or when the verdict is returned by the jury before it is accepted by the court." Rockwell neither objected to the general verdict form nor did it offer its own form to allow application of its affirmative defense. Furthermore, it did not request clarification of the verdict for purposes of applying its affirmative defense before the trial court received the verdict and the jury was discharged. Rockwell's failure to take any action to determine the basis of its liability under the general verdict resulted in abandonment of its affirmative defense.

*Id.* at 157 (internal citation omitted).

¶**39** Unlike *Kansas City Power*, here there was only one theory of liability submitted to the jury; i.e. conversion, so there does not exist the issue that the affirmative defense of gifting applied to one theory upon which the jury could have decided but not another theory simultaneously before the jury. Also unlike *Kansas City Power*, the Defendents' affirmative defense of ownership through gifting was dispositive as to whether they had engaged in conversion, rather than merely being secondarily applicable as a limitation upon their damages once liability was established.

¶**40** Moreover, in this case, the Defendants' affirmative defense had already been decided and applied within the verdict. In *Kansas City Power*, Rockwell's affirmative defense was to be ruled upon and applied by the trial court following the jury's verdict. Rockwell's affirmative defense, however, necessarily depended upon the jury basing its decision upon a specific theory, and if Rockwell wished to preserve its defense, it was incumbent upon Rockwell to ensure the trial court knew the specific theory upon which the jury rendered its verdict so as to be able to determine if the affirmative defense could be applied. Here, both the conversion claim and the affirmative defense were presented to, and resolved by, the jury. The Defendants did not have a post-verdict duty to ensure the jury clarified its verdict.

¶**41** As sufficient evidence was provided to the jury in support of Defendants' gift defense and the personal property values, *a fortiori*, the record must also be found to contain substantial support for the jury's

ultimate damages award in favor of Glenna. Thus, the trial court did not err by denying Glenna's motion for judgment as a matter of law. *Dawson v. Withycombe*, 216 Ariz. 84, 98-99, ¶¶ 35-36, 163 P.3d 1034, 1048-49 (App. 2007).

### III.     Motions for New Trial, Additur, and Arithmetic Correction of the Verdict

**¶42**          Along with her motion for JMOL, Glenna alternatively moved for: A) a new trial solely on damages under Arizona Rule of Civil Procedure 59(a)(8), B) additur, and C) arithmetic correction under Arizona Rule of Civil Procedure 60(b). The trial court denied each motion, and Glenna alleges it erred in doing so. We disagree.

####      A.     Denial of New Trial

**¶43**          Rule 59(a)(8) allows a trial court to vacate a "verdict, decision or judgment," when it "is not justified by the evidence or is contrary to law." Glenna's argument for a new trial tracks her JMOL: the general verdict established Defendants' full liability for all of the items taken, and a new trial on the issue of damages is warranted as the jury's damages award was against the weight of the evidence provided at trial.

**¶44**          We review the denial of a motion for new trial for an abuse of discretion. *Sandretto v. Payson Healthcare Mgmt., Inc.*, 682 Ariz. Adv. Rep. 10, ¶ 8, 322 P.3d 168, 172 (App. 2014). When considering a motion for new trial, the trial court must ask "whether the jury verdict is so 'manifestly unfair, unreasonable and outrageous as to shock the conscience.'" *Hutcherson v. City of Phx.*, 192 Ariz. 51, 55, ¶ 23, 961 P.2d 449, 453 (1998) (quoting *Young Candy & Tobacco Co. v. Montoya*, 91 Ariz. 363, 370, 372 P.2d 703, 707 (1962)). When ruling on such a motion, the trial court must pass upon the weight of the evidence and determine if "substantial justice has not been done between the parties." *Walsh v. Adv. Cardiac Specs. Chartered*, 229 Ariz. 193, 197, ¶ 15, 273 P.3d 645, 649 (2012) (citation omitted). If no evidence exists in the record to justify the verdict, it must be set aside. *Styles v. Ceranski*, 185 Ariz. 448, 450, 916 P.2d 1164, 1166 (App. 1996).

**¶45**          In denying Glenna's Rule 59(a) motion, the trial court found simply, "that the verdict [was] justified by the evidence and [was] not contrary to law." At trial, Glenna produced evidence of the items taken and their values, and Defendants admitted taking the items but produced evidence supporting their theory some of the items had been gifted. As previously stated, the jury may well have found certain items taken

belonged to the Covino Trust, and other items taken were owned by the Defendants as the result of gifting. As substantial evidence existed to support the verdict, the trial court did not abuse its discretion when it denied Glenna's motion for new trial. *Hutcherson*, 192 Ariz. at 53, ¶¶ 12-13, 961 P.2d at 451.

B.      Denial of Additur

**¶46**      Glenna also contends the trial court should have granted her motion for additur. "An 'additur' is an order by the trial court increasing a damage award as a condition to denying a motion for new trial" on the grounds of inadequate damages. *Warne Inv., Ltd. v. Higgins*, 219 Ariz. 186, 189 n.1, ¶ 5, 195 P.3d 645, 648 n.1 (App. 2008) (citing Black's Law Dictionary 41 (8th ed. 2004)); *see* Ariz. R. Civ. P. 59(i). "The question of additur is left to the greatest possible discretion of the trial court, and its decision will not be disturbed on appeal except for a case of clear abuse." *Bustamante v. City of Tucson*, 145 Ariz. 365, 366, 701 P.2d 861, 862 (App. 1985).

**¶47**      As with her previous motions, Glenna contends additur is appropriate because the jury established the Defendants' full liability, the damages amount was undisputed, and the verdict rendered a damages amount inconsistent with the undisputed amount. However, the trial court specifically noted "[d]amages were in fact disputed, and the jury resolved the dispute." It then determined damages were not insufficient or inadequate as to warrant additur. Given the evidence contained in the record and reflected above, the trial court did not abuse its discretion when it denied Glenna's additur motion.

C.      Rule 60(b)

**¶48**      Glenna, citing Arizona Rule of Civil Procedure 60(b)(2), also moved for the trial court to arithmetically correct the verdict. Rule 60(b)(2) states: "Where there is a mistake, miscalculation or misrecital of a sum of money [in a judgment] . . . and there is among the records of the action a verdict or instrument of writing whereby such judgment may be safely corrected, the court shall on application and after notice, correct the judgment accordingly."

**¶49**      Glenna contends the pre-trial statement containing "stipulated values" constitutes such an "instrument of writing" so as to safely correct the judgment amount of $15,000. As with her other post-verdict motions, Glenna's argument is flawed as it rests upon the incorrect assumption the jury found Defendants converted each item complained of

in this case; it also rests upon the unsupported conclusion the values were, in fact, stipulated. *See infra* ¶¶ 28-29 & n.5.

¶50 Moreover, the cases Glenna relies upon for a court's ability to correct an award of damages, *Banner Realty, Inc. v. Turek*, 113 Ariz. 62, 546 P.2d 798 (1976) and *Ward v. Johnson*, 72 Ariz. 213, 232 P.2d 960 (1951), are inapplicable to the facts of this case. For instance, the recovery of damages in *Banner Realty* was specifically set by contract. 72 Ariz. at 64, 546 P.2d at 800. Likewise, *Ward* noted a court may compute the proper amount of damages if the damages are fixed or undisputed, and found, in that case, that a claim for $10,000 for a willful tort, alone, was insufficient to justify the court's correction of a jury award for less than the claimed amount. Here, the record demonstrates, as the trial court found, that damages were disputed. Therefore, the trial court did not commit error when it declined Glenna's invitation to arithmetically correct the jury's verdict.

## IV.    Unjust Enrichment

¶51 Glenna finally contends the trial court erred when it found against her on her unjust enrichment claim. Unjust enrichment is an equitable remedy, and we review its availability de novo. *Loiselle v. Cosas Mgmt. Group, LLC*, 224 Ariz. 207, 210, ¶ 8, 228 P.3d 943, 946 (App. 2010); *Murdock-Bryant Const., Inc. v. Pearson*, 14 Ariz. 48, 53, 703 P.2d 1197, 1202 (1985) (citation omitted).

¶52 A claim for unjust enrichment arises "when one party has and retains money or benefits that in justice and equity belong to another." *Loiselle*, 224 Ariz. at 210, ¶ 9, 228 P.3d at 946. To prevail on an unjust enrichment claim, a plaintiff must prove: "(1) an enrichment, (2) an impoverishment, (3) a connection between the enrichment and impoverishment, (4) the absence of justification for the enrichment and impoverishment, and (5) the absence of a remedy provided by law." *Wang Elec., Inc. v. Smoke Tree Resort, LLC*, 230 Ariz. 314, 318, ¶ 10, 283 P.3d 45, 49 (App. 2012). As noted, to succeed on an unjust enrichment claim, "a party must show 'the absence of any remedy at law." *Loiselle*, 224 Ariz. at 211, ¶ 14, 228 P.3d 943, 947 (quoting *Mousa v. Saba*, 222 Ariz. 581, 588, ¶ 29, 218 P.3d 1038, 1045 (App. 2009)). The trial court found against Glenna because it determined, as a matter of law, "an adequate remedy exist[ed] at law" — her successful conversion claim — for the relief Glenna sought under her unjust enrichment claim. We agree with the trial court that Glenna's conversion claim constituted an adequate remedy at law.

¶53        In Arizona, the measure of damages for conversion includes the value of the property taken, as well as "other damage suffered because of the wrongful detention or deprivation of the property, such as damages for loss of use." *Collins v. First Fin. Servs., Inc.*, 168 Ariz. 484, 486, 815 P.2d 411, 413 (App. 1991); *see* Restatement (Second) of Torts § 222A (1965) cmt. c ("In conversion the measure of damages is the full value of the chattel, at the time and place of the tort. When the defendant satisfies the judgment in the action or conversion, title to the chattel passes to him, so that he is in effect required to buy it at a forced judicial sale."). Therefore, Glenna was able to pursue damages to satisfy the full value of the items taken from her, making her whole, and requiring the Defendants to pay the full value of only the items the jury found the Defendants to have wrongfully taken.

¶54        However, having already been made whole through the jury's verdict, Glenna continued to seek a constructive trust over the items taken. A constructive trust is an equitable remedy imposed to compel one who unfairly holds a property interest to convey it to the person to whom it justly belongs. *Harmon v. Harmon*, 126 Ariz. 242, 244, 613 P.2d 1298, 1300 (App. 1980). Essentially, through her conversion and unjust enrichment claims, Glenna sought a double recovery, whereby she would receive payment for the full value of what she believed to be the converted items, along with the return of those converted items. Such a result does not obtain in equity as plaintiff is not entitled to the value of the items converted along with the return of those same items. *Cf. Hall v. Schulte*, 172 Ariz. 279, 284, 836 P.2d 989, 994 (App. 1992) ("A plaintiff is entitled to be made whole in damages, and that is all."); *Zeckendorf v. Steinfeld*, 15 Ariz. 335, 340, 138 P. 1044, 1046 (1914) ("As we understand it, the general rule, both at law and in equity, is that the owner is entitled to the *return of his property or its value at the time of its wrongful conversion*.") (emphasis added).

¶55        Glenna argues, relying upon *Hill v. Hill*, 345 P.2d 1015, 1025 (Kan. 1959), which was cited within *Loiselle*, that "[t]he existence of a remedy at law does not deprive equity of jurisdiction unless such remedy is clear, adequate and complete." *Hill*, 345 P.2d at 1025; *Loiselle*, 224 Ariz. at 211, ¶ 14, 228 P.3d at 947. Glenna does not, however, demonstrate the manner by which her conversion remedy was insufficiently "clear, adequate and complete." Rather, she merely relies upon her belief of being entitled to the full value of all of the items she claimed were converted, and as she was awarded a lesser amount, the remedy was incomplete or inadequate. Obvious to the point of a truism is the trial court's assessment of this argument: "That [Glenna] was unsuccessful in

receiving the full amount of the damages she sought [on her conversion claim] does not mean that she did not have an adequate remedy at law."

¶56 As an adequate remedy at law existed, we find no error in the trial court's finding against Glenna on her unjust enrichment claim.

### CONCLUSION

¶57 We affirm the trial court's denial of Glenna's motions for partial summary judgment, judgment as a matter of law, new trial, additur, and arithmetic correction of the verdict; we also affirm the trial court's ruling on Glenna's unjust enrichment/constructive trust claim.



Ruth A. Willingham · Clerk of the Court
F I L E D : gsh